WEBB v SMITH (AFTER SECOND REMAND)

Docket No. 185573. Submitted November 12, 1996, at Grand Rapids. Decided June 13, 1997, at 9:20 A.M. Leave to appeal sought.

Donald W. and Arlene S. Webb and Keith Thurlow brought an action in the Midland Circuit Court against Warren R. and Faye C. Myhra Smith, seeking injunctive relief with regard to the enforcement of certain negative reciprocal easements applicable to parcels of property owned by the parties that provided that no dwelling could be placed closer than twenty feet from the front lot line and not more than one building could be used for dwelling purposes on each lot. The court, Paul J. Clulo, J., entered a judgment for the defendants, finding that they did not have actual or constructive notice of the restrictions and that there was no reciprocal negative easements. The plaintiffs appealed and the Court of Appeals, HOOD, P.J., and WEAVER and MARILYN KELLY, JJ., reversed and remanded the matter to the trial court in an unpublished opinion per curiam decided May 8, 1991 (Docket No. 117920). On remand, the trial court again concluded that the restrictions were not violated and entered a judgment for the defendants. The Webbs appealed. After remand, the Court of Appeals, TAYLOR, P.J., and REILLY and M. J. TALBOT, JJ., reversed and remanded the case to the trial court to impose the appropriate equitable or legal remedy, ruling that the defendants' home did not comply with the front line restriction and also violated the restriction regarding only one dwelling per lot. 204 Mich App 564 (1994). On second remand, the trial court ordered the defendants to remove their house from the lot, finding the lot subject to the one dwelling per lot restriction, that the injury to the plaintiffs was substantial, and that the changes in the condition of the neighborhood did not prevent the restrictions' purposes of privacy and aesthetics from being accomplished. The defendants appealed.

After second remand, the Court of Appeals *held*:

1. The defendants had notice of the restrictions before construction of their home was complete. In addition, the law of the case doctrine binds the Court of Appeals to follow an earlier panel's ruling that the defendants had constructive notice of the restrictions. Neither of the two exceptions to the doctrine that apply when the decision would preclude the independent review of constitutional

facts or there has been an intervening change of law applies in this case.

2. The trial court did not commit error requiring reversal in failing to apply a balancing of the equities analysis. Courts regularly enforce injunctions based on valid restrictions regardless of the parties' damages. The three equitable exceptions to the general enforcement rule regarding technical violations and absence of substantial injury, changed conditions, and limitations and laches do not apply under the facts of this case.

Affirmed.

1. APPEAL — LAW OF THE CASE — EXCEPTIONS.

The law of the case doctrine provides that an appellate court ruling on a particular issue binds the appellate court and all lower tribunals with regard to that issue and prevents them from deciding a legal question differently where the facts remain materially the same; the doctrine applies to questions specifically decided in the earlier decision and to questions necessarily determined to arrive at that decision; two exceptions to the doctrine exist: one exception applies when the decision would preclude the independent review of constitutional facts, the other applies when there has been an intervening change of law.

2. APPEAL — EQUITY.

The Court of Appeals, when reviewing equitable actions, reviews de novo the equitable decision and reviews for clear error the findings of fact supporting the decision.

3. DEEDS — RESTRICTIVE COVENANTS — INJUNCTIONS.

Public policy favors use restrictions in residential deeds; the judiciary's policy is to protect property owners who have complied with deed restrictions; courts generally enforce valid restrictions by injunction regardless of the parties' respective damages; economic damages suffered by a landowner seeking to avoid a restriction do not, by themselves, justify a lifting of the restrictions.

4. DEEDS — NEGATIVE EASEMENTS.

A negative easement is a valuable property right that a landowner may enforce regardless of the extent of the owner's damages; it is wholly immaterial to what extent any other lot owner may be injured when enforcing a negative easement against a forbidden use.

5. DEEDS — RESTRICTIVE COVENANTS — INJUNCTIONS — EXCEPTIONS.

There are three equitable exceptions to the enforcement of the general rule that courts enforce valid restrictions by injunction: techni-

cal violations and absence of substantial injury, changed conditions, and limitations and laches; a technical violation is a slight deviation or a violation that in no way adds to or takes from the objects and purposes of the general scheme of development.

6. DEEDS — RESTRICTIVE COVENANTS — JUDICIAL CONSTRUCTION.

A court interpreting a restrictive convenant must give effect to the instrument as a whole; the subdivider's intention and purpose must be considered if any doubt arises regarding the meaning of the restrictions.

*Lambert, Leser, Cook, Giunta & Smith, P.C.* (by *David L. Powers* and *Brenda S. Sanford*), for Donald and Arlene Webb.

*Knaggs, Harter, King & Brake, P.C.* (by *Ronald A. King* and *David D. Grande-Cassell*), for Warren and Faye Smith.

AFTER SECOND REMAND

Before: WAHLS, P.J., and YOUNG and J. H. FISHER*, JJ.

YOUNG, J. In this action involving deed restrictions, defendants appeal as of right an order granting injunctive relief to plaintiffs and requiring defendants to remove their house from defendants' property. We affirm.

This appeal marks the parties' third appearance before this Court regarding the subject property.[1] This dispute began over eight years ago, when defendants Warren and Faye Smith purchased property and began to build their home upon it. Defendants concede that they built their home on the property despite two deed restrictions that prohibited this con-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] See *Webb v Smith*, unpublished opinion per curiam of the Court of Appeals, issued May 8, 1991 (Docket No. 117920), and *Webb v Smith (After Remand)*, 204 Mich App 564; 516 NW2d 124 (1994).

struction. This case illustrates the folly of gambling on the prospect that Michigan's judicial system will ignore and fail to enforce the property rights of others. Defendants' gamble has resulted in the unfortunate outcome that they must now tear down the home that they built.

Inasmuch as the previous opinions issued by this Court adequately set forth the undisputed facts, we only briefly revisit facts pertinent to this case. In 1988, defendants purchased one-half of a lakeshore lot in a residential subdivision. A home owned by third parties already existed on the other half of this lot. Defendants began construction of their home in March 1989. The deed to defendants' property did not contain restrictions that appeared on deeds to the other lots in the subdivision.

Plaintiffs Donald and Arlene Webb and Keith Thurlow owned lots adjacent to defendants' lot.[2] Plaintiffs anticipated that the construction of defendants' home would violate both the subdivision's negative covenants and the township's zoning ordinances. The subdivision covenants at issue stated: "No building or dwelling shall be placed closer than 20 feet from the front lot line, and not more than one building shall be used for dwelling purposes on each lot." Plaintiffs also believed that defendants' home would partially block their view of the lake. The township refused to take legal action against defendants because it had issued the building permit. In April 1989, plaintiffs filed suit to force defendants to remove their home.

---

[2] Although he was named in the original complaint for injunctive relief, Mr. Thurlow is no longer a party to this action.

After a bench trial in May 1989, the court denied plaintiffs' request for a permanent injunction and granted judgment to defendants. The court found that the restrictions did not operate as negative reciprocal easements because defendants had no actual notice of them. Also, the court ruled that the township's ordinances would be unreasonable and confiscatory if applied to defendants' property. Upon plaintiffs' timely appeal, this Court concluded in 1991 that defendants had constructive notice of the restrictions. We then reversed and remanded the case for a rede-termination of whether defendants' home violated the reciprocal negative easements.

On remand, in 1992, the trial court again granted judgment to defendants, ruling that the house did not violate the reciprocal negative easements. The court determined that the term "lot" denoted a parcel as conveyed, not as originally platted. The court inter-preted the term "front lot line" to denote the water-line as opposed to the survey line.

In its 1994 opinion, *Webb v Smith (After Remand)*, 204 Mich App 564; 516 NW2d 124 (1994), this Court ruled that defendants' home did not comply with the front lot line restriction because defendants had mea-sured from the waterline, not the survey line. Impor-tantly, this Court also held that defendant's house directly violated the restriction that permitted only one dwelling per lot. This Court reversed and remanded the case to the trial court to impose the appropriate equitable or legal remedy.

On second remand, after an evidentiary hearing, the trial court, in 1995, ruled that defendants' lot was sub-ject to the one dwelling per lot restriction, stating that "plaintiffs' [sic] had a right to expect that no

dwelling would ever rest upon the defendants' lot." The court rejected defendants' argument that the violation did not cause substantial injury, noting that plaintiffs had suffered losses of view, light, and privacy. The court added: "When one considers that plaintiffs have a right to an empty lot next door, it becomes very difficult to argue that their injury is not substantial." The court also rejected the defendants' argument that the plaintiffs' request for the injunction should be denied because the restrictions' purposes of privacy and aesthetics could not be accomplished because the neighborhood conditions had changed. The court ordered defendants to remove their house from the lot. Defendants appeal.

On appeal, defendants attempt to revisit the issue of their notice of the restrictions. They state in their appellate brief that neither they nor their builder had any knowledge of the restrictions at the time of construction. This argument particularly is interesting given that, on the next page of their brief, defendants admit that only the foundation and framing had been completed when the trial court issued its first decision in May 1989. That defendants continue to argue that they were without notice defies logic. Defendants testified that they had learned of the deed restrictions on April 1, 1989, well before the contractor had finished building. Although the trial court first ruled in defendants' favor, plaintiffs immediately appealed that ruling. Therefore, defendants were on notice of the restrictions and of plaintiffs' appeal before construction of their home was complete. They may not now argue that they built their home in good faith and as a result of an "honest mistake."

Additionally, this Court is bound by the law of the case on this issue. An earlier panel of this Court ruled that defendants had constructive notice of the restrictions:

> The trial judge concluded that the defendants did not have actual notice of the restrictions. We agree. However, they did have constructive notice, as the restrictions could be found in the majority of the deeds of the other subdivision lots. Contrary to defendants' contention, in order to constitute constructive notice, case law does not require an additional finding of uniform development or circumstances. In some instances, it may be an additional persuasive factor.
>
> The trial judge committed clear error when ruling that the defendants lacked constructive notice. . . . [*Webb v Smith*, unpublished opinion per curiam of the Court of Appeals, issued May 8, 1991 (Docket No. 117920).]

Defendants vigorously assert that this Court is not bound to follow the law of the case doctrine with regard to this issue. We disagree.

Under the law of the case doctrine, an appellate court ruling on a particular issue binds the appellate court and all lower tribunals with regard to that issue. *MS Development, Inc v Auto Plaza of Woodhaven (After Remand)*, 220 Mich App 540, 548; 560 NW2d 62 (1996). The law of the case mandates that a court may not decide a legal question differently where the facts remain materially the same. *McNees v Cedar Springs Stamping Co (After Remand)*, 219 Mich App 217, 222; 555 NW2d 481 (1996). The doctrine applies to questions specifically decided in an earlier decision and to questions necessarily determined to arrive at that decision. *MS Development, supra* at 548. The rationale supporting the doctrine is the need for finality of judgment and the want of jurisdiction in an

appellate court to modify its own judgments except on rehearing. *McNees, supra* at 222. Two exceptions to the doctrine exist: (1) when the decision would preclude the independent review of constitutional facts and (2) when there has been an intervening change of law. *MS Development, supra* at 548, n 6. Because neither exception applies in this case, and as this Court specifically decided the notice issue in its earlier opinion, the law of the case doctrine constrains us from revisiting the issue.

Defendants also contend that the circuit court committed error requiring reversal in not considering damages as a potential remedy in this case. Defendants offer no authority to support their contention that the court was obliged to contemplate damages as an alternative remedy. A party may not leave it to this Court to search for authority to sustain or reject the party's position. *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996).

Defendants next argue that the trial court committed error requiring reversal in failing to apply a balancing of the equities analysis. We disagree. This Court reviews equitable actions under a de novo standard. We review for clear error the findings of fact supporting the decision. *Sackett v Atyeo*, 217 Mich App 676, 680; 552 NW2d 536 (1996); *Mitchell v Dahlberg*, 215 Mich App 718, 727; 547 NW2d 74 (1996).

Initially, we note that a negative easement is a valuable property right. *Austin v Van Horn*, 245 Mich 344, 346; 222 NW 721 (1929). Further, public policy favors use restrictions in residential deeds. *Rofe v Robinson (On Second Remand)*, 126 Mich App 151, 157; 336 NW2d 778 (1983). The judiciary's policy is to protect

property owners who have complied with the deed restrictions. *Id.* Restrictive covenants protect property values and " 'aesthetic characteristics considered to be essential constituents of a family environment.' " *Id.* (citation omitted).

Michigan courts generally enforce valid restrictions by injunction. *Cooper v Kovan*, 349 Mich 520, 530; 84 NW2d 859 (1957). Moreover, courts typically do not consider the parties' respective damages, as is illustrated by the case law that follows. Owners may enforce negative easements regardless of the extent of the owners' damages. When enforcing a negative easement, "it is wholly immaterial to what extent any other lot owner may be injured by the forbidden use." *Austin, supra* at 346. The economic damages suffered by the landowner seeking to avoid the restriction do not, by themselves, justify a lifting of the restrictions. *Rofe v Robinson*, 415 Mich 345, 350; 329 NW2d 704 (1982). Because courts regularly enforce injunctions based on valid restrictions and because the parties' damages are immaterial, the circuit court did not err in failing to apply a balancing test.[3]

In *Cooper, supra* at 530, however, our Supreme Court set forth three equitable exceptions to the general enforcement rule: (1) technical violations and absence of substantial injury, (2) changed conditions, and (3) limitations and laches. The third exception, limitations and laches, is not at issue in this case.

---

[3] Also, the cases defendants rely on for a balancing test analysis, *Grand Haven Twp v Brummel*, 87 Mich App 442; 274 NW2d 814 (1978), and *Lemmon v Wineland*, 255 Mich 90; 237 NW 527 (1931), involve only setback requirements. In this case, the setback restriction does not stand alone; defendants also must comply with the "one dwelling per lot" restriction not at issue in the cited cases.

Defendants challenge the restrictions under the remaining two exceptions as discussed below.

First, defendants argue that the trial court committed error requiring reversal in enjoining defendants' violations because the violations were purely technical and resulted in no substantial harm to plaintiffs. We disagree. As noted, although courts generally will enforce valid restrictions, an equitable exception to that rule occurs when a restriction is technically violated and no substantial injury results. *Cooper, supra* at 530. Because no Michigan court has defined a "technical violation" in this context, we adopt the definition in *Camelot Citizens Ass'n v Stevens*, 329 So 2d 847 (La App, 1976), which characterized a technical violation of a negative covenant as a "slight deviation" or a violation that " 'can in no wise, we think, add to or take from the objects and purposes of the general scheme of development . . . .' " *Id.* at 850 (citation omitted).

Defendants' house, built on a half-lot where no house was allowed, presents more than a "slight deviation" from the terms of the covenants. Courts give effect to the instrument as a whole when interpreting restrictive covenants. *Rofe, supra*, 126 Mich App 157. If any doubt arises surrounding the meaning of the restrictions the court must consider the subdivider's intention and purpose. *Id.* The restriction clearly permits only one dwelling per lot. Defendants' house detracted from the covenants' stated purposes of regulating construction to guarantee a level of privacy and aesthetic enjoyment to the subdivision's landowners. Further, testimony reflected that plaintiffs' property was impaired because defendants' house obscured their view of the lake and that the

resulting damage amounted to at least $5,500. Thus, the trial court correctly held that plaintiffs' harm was substantial.

Second, defendants maintain that the trial court erred in enjoining defendants' violations because conditions had changed in the subdivision so as to make enforcement of the covenants inequitable. We disagree. A change in neighborhood conditions presents another equitable exception to the enforcement of a restriction. *Cooper, supra* at 530. The evidence in this case did not establish that the covenants' purposes could no longer be accomplished. Although defendants rely on testimony regarding the general growth of the area, such testimony is insufficient to excuse a covenant violation. *Id.* at 531-532. Indeed, our Supreme Court noted that if something more than general growth was not required, it "would place all residential restrictions in substantial jeopardy." *Id.* at 532. See, also, *Parcells v Burton,* 20 Mich App 457, 462-463; 174 NW2d 151 (1969).

Finally, defendants allege that pervasive view blockage by other structures around the lake has prevented the achievement of the covenants' purposes. Defendants do not argue that any other *homes* violate the restrictions: they only vaguely assert that docks, porches, and gazebos in the subdivision constitute violations. Defendants do not cite the lower court record and a review of the record does not reveal facts regarding other structures on the lake that allegedly violate the covenants. We thus decline to address the argument. *Harkins v Dep't of Natural Resources,* 206 Mich App 317, 323; 520 NW2d 653 (1994). Further, the case that defendants cite in support of their argument, *Gamble v Hannigan,* 38 Mich App 500; 196

NW2d 807 (1972), is distinguishable. In *Gamble*, only a portion of the defendant's porch, not her entire home, was set back insufficiently from the front lot line. Also, the restriction of only "one dwelling per lot" in this case was not at issue in *Gamble*.

The order requiring defendants to demolish their home seems harsh; nonetheless, we point out that the applicable deed restrictions were readily ascertainable. Further, as noted above, defendants were aware of the restrictions within weeks of the initiation of construction. They continued with the construction in defiance of the restrictions and in the face of plaintiffs' appeal to this Court. Defendants thus assumed the risk that a court might ultimately order them to remove their home, which we are bound to do under the prevailing case law.

An earlier panel of this Court aptly summed up this case:

> We note that there is at least some indication that defendants improvidently continued with construction of their home with full knowledge of the nature of the dispute at hand. In that regard, defendants did so at their own peril. [*Webb, supra*, 204 Mich App 573.]

Although we are legally bound to the result we announce in this opinion, the parties still have an opportunity to reach a private agreement more palatable to each side that does not require the removal of defendants' home. However unfortunate the result, this case has traversed the appellate stairway three times since 1991 and it is time for this dispute to be put to rest.

Affirmed. Plaintiffs, being the prevailing party, may tax costs pursuant to MCR 7.219.