## In re SIGNATURE DEVELOPMENTS, INC., Debtor.

### No. 02–30067–WS.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Aug. 24, 2006.

Jeffrey A. Chimovitz, Flint, MI, for Debtor.

*OPINION GRANTING TRUSTEE'S MOTION FOR APPROVAL OF AGREEMENT WITH LAPEER COUNTY BANK & TRUST AND FOR TRANSFER OF REAL PROPERTY FREE AND CLEAR OF LIENS, INTERESTS AND ENCUMBRANCES*

WALTER SHAPERO, Bankruptcy Judge.

This matter came before the Court on the Trustee's Motion For Approval of

Agreement with Lapeer County Bank & Trust Company ("LCBTC") and for the transfer of real property free and clear of liens, interests and encumbrances. Creditor, Roods Lake Properties, LLC ("Roods") objects. The Court took the matter under advisement, and for the following reasons, the Court grants the trustee's motion.

*Facts*

The facts of this case are relatively simple and not in dispute. On January 7, 2002, the Debtor, Signature Developments, Inc., formerly known as Rauh Custom Homes (the "Debtor"), filed a Voluntary Petition for Relief pursuant to Chapter 7 of the Bankruptcy Code. Samuel Sweet was appointed as the Trustee.

Debtor was the developer of the Christine Estate Subdivision ("CES") consisting of a number of residential lots, two of which ("H and I") were mortgaged to LCBTC. Included in the comprehensive CES subdivision restrictions and provisions (to which all property in the subdivision and that mortgage were originally subject) is paragraph 43 which states as follows:

> Rauh Custom Homes, Inc., (or to any person(s) or company to whom it specifically assigns its rights) shall be the exclusive builder for all improvements within the above-described property. ("Builder Restriction"). (Rauh Custom Homes, Inc., was Debtor's former name.)

During the course of the administration of debtor's chapter 7 bankruptcy, various disputes arose relating to CES and the trustee's efforts to sell some or all of the lots in that subdivision. Eventually the Court approved the trustee's proposed sale and transfer of some of the lots (other than H and I) to Roods (an entity largely composed directly or indirectly of members of a family which held ownership interests in Debtor). The property sold and transferred included the attendant "hereditaments," i.e.: which included the Builder Restriction rights with reference to all of the lots in CES, (including those rights with reference to lots H and I). Out of the total sale proceeds or consideration received, $120,000 was specifically allocated by these parties to the indicated Builder Restriction rights.

The trustee thereafter continued his efforts to sell parcels H and I on which LCBTC held a mortgage. LCBTC had filed a proof of claim stating the two parcels had a value of some $235,000 and it was owed some $220,000. The trustee initially filed an objection to that claim on the grounds he did not administer or sell the property involved. Thereafter, the trustee filed the motion pending before the Court in the form of a pleading seeking an order approving sale of the two parcels to LCBTC on the conditions that: (1) LCBTC would pay the trustee $30,000; and (2) the transfer would be free and clear of all liens, interests and encumbrances, including the Builder Restriction. The trustee's motion indicated that the mortgage claim of LCBTC was approximately $220,000 and the value of parcels H and I, approximately that same amount, and further, that the trustee was agreeable to the arrangement because if the Rood's Builder Restriction rights attached to the property (and if by reason thereof the trustee was unable to effect a sale free of such rights), the value of the property would be diminished with the result that: (1) the trustee would receive nothing, and (2) there would likely arise a large unsecured deficiency claim in favor of LCBTC (which would be adverse to the interests of the other unsecured creditors). Presumably the result of a granting of the motion would also be that (a) the claim and lien of LCBTC would be extinguished, and (b) any other claims or interests the conveyance was being made free of (including the

Builder Restriction) would be transferred to the proceeds, out of which would come the payment of the various claimants and interests therein, including that of Roods.

Court approval of this sale is sought under 363(f), which permits a trustee to sell property free and clear of any interest in such property of an entity, but only if one of five listed circumstances exist. The only one applicable to this case is 363(f)(5), which permits the sale if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." The basic question then is whether or not Roods can be compelled to accept a money satisfaction of its Builder Restriction rights under applicable law. The Trustee and LCBTC both argue the Trustee's motion should be granted. Roods argues it should be denied.

### Parties' Arguments

The trustee initially posited the issues as the Court first having to decide whether the Builder Restriction is such an interest in property as to be subject to 363(f) and if so, then having to decide if its owner can be compelled to accept a money judgment in satisfaction thereof. The trustee does not seem to strongly argue that the Builder Restriction is not a property interest (in light of cases like *Gouveia v. Tazbir*, 37 F.3d 295 (7th Cir.1994), and *In re Wolverine Radio Company*, 930 F.2d 1132 (6th Cir.1991)) but does strongly argue, conceding that point for arguments sake, that if it is a "property" interest (the sale of which 365(f) regulates), it is satisfiable by, and Rood can be compelled to accept, a money judgment. He cites in support of his position in *In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir.2003) where that Court engaged in an extended discussion of both issues, in the context of a sale by that debtor of rights under a travel voucher program and employment discrimination claims. That Court declined to narrowly construe or restrict the meaning and

parameters of a "property interest" to *in rem* interests, but affirmed the lower courts conclusions that 365(f)(5) was satisfied because the property interests involved were such as could be reduced to specific monetary value and thus were or could be satisfiable by, a monetary award, "even if the relief sought is injunctive in nature." *Id.* at 291 (citing *In re Continental Airlines*, 125 F.3d 120, 133–36 (3d Cir. 1997)).

LCBTC essentially concurs in the Trustee's arguments.

Roods compares this case to the facts in *Gouveia, supra,* but makes a more expansive and detailed argument, attempting to show that the Builder Restriction applicable to lots H and I is a property interest it holds in reference to which they cannot be compelled to accept a monetary satisfaction. Roods argues that the Builder Restriction in this case is similar to the covenant in *Gouveia,* (which was a restrictive reciprocal land covenant restricting the owners in the involved neighborhood to single-story residential uses) and as such an easement in gross, as opposed to an easement appurtenant. Roods argues that under Michigan law, the former is enforceable and assignable, and likewise one for which its holder cannot be compelled to accept monetary damages—citing *Hasselbring v. Koepke,* 263 Mich. 466, 476, 248 N.W. 869 (1933) ("Plaintiff's remedy, if any, is in equity."); and *Hall v. City of Ionia,* 38 Mich. 493, 1878 WL 6967 (1878). Roods further states that the Trustee's and LCBTC's arguments that Rood's interest is more similar to a mortgage lien than the interest in *Gouveia,* is mistaken, as well as that the rights involved in the *Trans World* case, *supra,* are also different because Michigan law distinguishes interests in real property from other property interests, i.e., "Land, traditionally presumed to have a peculiar value, is sub-

ject to specific performance." *Kent v. Bell*, 374 Mich. 646, 651, 132 N.W.2d 601 (1965). Finally, Roods argues that (1) LCBTC implicitly waived its right to object because it failed to object to the transfer of the Builder Rights incident to the sale of the lots other than H and I; and (2) the Court should consider the interests of the other property owners in Christine Estates, i.e., they have a justiciable interest in the easements or restrictions applicable to lots H and I, and were not notified of the pending motion and should have been; (3) generally, and the Builders Restriction specifically, the Court should consider governmental interests arising from the fact that Mayfield Township approved of the platting of Christine Estates upon the condition that the subdivision and each of the lots would comply with the Township's ordinances and that the Trustee has neither the authority to transfer lots H and I free and clear of the Township's interests without the Township's approval nor the right to pick and chose which interests continue to apply and which do not.

### Analysis

■ 11 U.S.C. § 363 provides:

(f) The trustee may sell property under subsection (b) or (Chapter 7) of this section free and clear of any interest in such property of an entity other than the estate, only if (absent the entity's consent)–

. . . . .

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(5).

Roods is an entity other than the estate, and the parties appear to agree the Builder Restriction is a "property" interest in lots H and I, though the Trustee implicitly argues that interest is not an interest in real property. The statute, however, clearly refers only to "property" not "real property," so the issue and argument is a needless and irrelevant one.

Both parties agree that the Court should start with the Seventh Circuit's ruling in *Gouveia*. In *Gouveia*, the debtor owned property within a residential subdivision known as Lincoln Knolls Estates ("Lincoln"). *Id.* at 297. Included with a land covenant applying to the property ("Lincoln Covenant"), was a restriction limiting the neighborhood to single-story, residential property. *Id.* The debtor obtained permission from the city zoning commission to build a music store on her property in violation of the Lincoln Covenant. *Id.* Other Lincoln residents sued to enforce the covenant. *Id.* The state trial court ruled in favor of the debtor. *Id.* Immediately thereafter, the debtor built her music store. *Id.* However, as the debtor completed construction, a state appellate court reversed the trial court, and found the Lincoln Covenant enforceable. *Id.* Because of the appellate court's ruling, the debtor was forced to file for relief under Chapter 11 of the Bankruptcy Code. *Id.* (The case was later converted to a Chapter 7 case). The debtor attempted to sell her Lincoln property free and clear of the Lincoln Covenant. *Id.* The other Lincoln residents objected. *Id.*

The Seventh Circuit affirmed the Bankruptcy Court and District Court opinions, holding that the debtor (or the Chapter 7 trustee) could not sell the property free of the Lincoln Covenant. *Id.* at 301. The *Gouveia* Court's reasoning is relevant to this case for one major reason. The trustee in *Gouveia*, like the Trustee in this case, argued that the objecting parties' interests—whether the objectors be the other members of the neighborhood, or those of the owner of the right—was satis-

fiable by monetary damages under 11 U.S.C. § 363(f)(5). *Id.* at 298.

In doing so, the *Gouveia* Court first determined that the Lincoln Covenant was a "property" interest. Citing a line of cases from Indiana, the Court held that such a covenant, while containing characteristics of both a contract and an interest in real estate, is actually a property interest. *Id.* (This Court need not further address this issue in detail here because parties in interest agree Rood's interest is at least a "property" interest.)

The *Gouveia* Court next addressed whether § 363(f)(5) applied to the Lincoln Covenant, so as to allow the trustee to sell the debtor's property free and clear of the covenant. It recognized that in order for § 363(f)(5) to apply, an entity must be able to be "compelled" to accept money damages in lieu of equitable enforcement. "From this language, we conclude that if the money damages are available upon the consent of those who hold the covenant, then such persons are compelled to accept money, and thus § 363(f)(5) does not apply." *Id.* at 299.

In *Gouveia*, the Court looked among other things to the language of enforcement provision in the Lincoln Covenant, to wit.

> Enforcement shall be by proceeding at law or in equity against any person or persons violating or attempting to violate any covenant either to restrain violation or recover damages.

Interpreting and applying this language, the Court concluded the landowners had the option to pursue monetary damages, but they could not be compelled to saying "the cited provision speaks only in terms of the election of remedies available to those landowners who seek the enforcement covenant. No mention is made of any rights available to the hearsay landowners at this option to ultimately elect

among the enforcement seekers potential remedies." *Id.* at 299.

The enforcement provision of the restrictions in *this* case states:

> 40. Should any person, family, firm or corporation violate or attempt to violate any of the restrictions herein contained, it shall be lawful for any person or persons owning any of the above-described property, or Rauh Custom Homes, Inc. (Or to any person or group to whom it specifically assigns its rights), so long as it has an ownership interest in any parcel, to prosecute any proceeding at law and equity against such violator to enjoin such violation and/or recover damages for same including any and all costs for enforcing these restrictions: Attorney fees, court costs, and the like.

In substantive purport it is not much different than the enforcement provision in *Gouveia* in the sense that it also gives to only the enforcing owner the right, and option, to enjoin a violation and/or recover damages, against and from the violator. In that respect the cases are facially comparable. However, this Court declines to initially follow the lead of that case because: (1) that court misread the meaning and purport of the word "compelled" in the context and framework of the statute; and (2) the Builder Restriction in this case is substantially different than the Covenant involved in that case.

The enforcement remedy covenant provision in *Gouveia*, like the one in this case, is typical of such. It would be rare (and indeed antithetical to the interests of the subdivision developer and therefore highly unlikely) if there would ever be included in such a provision phraseology explicitly giving a restriction violator the right or option to force (i.e., "compel") the restriction enforcer to accept damages in lieu of injunctive or other equitable relief, in a situation where damages under applicable law

would otherwise be an available alternative remedy. The way this Court reads what the Court said, and did, in *Gouveia,* is that the remedy language in the restrictions controls so that if that language doesn't, or can't be construed to explicitly, give a violator the right or option to compel acceptance of damages in lieu of say specific performance, (or the enforcer does not consent to accepting a damage option), 363(d)(5) is simply not satisfiable. In substance and effect that means that the enforcer's consent is, and in almost all circumstances will be required (and likely unobtainable).

That kind of statutory construction, and result, is itself antithetical to principles of statutory construction, because: (1) the need for a requirement of consent is already embodied in another section of that same statute, 363(d)(2), so that for (d)(5) to mean anything more or have some greater effect than what is already embodied in (d)(2), it must be construed to at least allow for the possibility that notwithstanding the lack of consent of a restriction enforcer, the property could be sold free of the restriction, if, and only if, under applicable law/equity principles a damage remedy in lieu of an injunctive or other equitable remedy, is otherwise available in the particular situation, and (2) it is inconsistent with this Court's view that the general intent and design of 363(d) statute is to create and allow for the possibility of a debtor being able to more freely liquidate property in a bankruptcy situation, albeit under the very specific and limited conditions stated in the statute.

■ Looking at the statute in this way means the term "compelled" should be construed as not being limited to only whether or not the terms of the contract or restriction involved specifically provide for it (as the Court in *Gouveia* saw it), but rather whether absent such, applicable law permits it and whether under the specific

circumstances of the case a Court can choose to "compel" the beneficiary or enforcer to accept the damage remedy.

■ That said, the inquiry and analysis then shifts to whether or not applicable law provides for the availability of money damages in lieu of equitable enforcement and whether or not such is appropriate in this situation.

In *Trans World Airlines, Inc.,* the Court of Appeals in a 363(f)(5) inquiry agreed with the Bankruptcy Court and District Court determinations "that, because the travel voucher and EEOC Claims were both subject to monetary valuation, the fifth condition had been satisfied." That Court cited *In re Continental Airlines,* 125 F.3d 120, 133–136 (3rd Cir.1997) as support for that conclusion. The latter case essentially involved the question, among others, of whether or not the Court could award damages in lieu of specific performance in connection with pilots' filed claims for seniority integration in connection with a pre bankruptcy airline acquisition by the debtor. Essentially the *Continental* Court concluded that while reinstatement might be the preferred remedy, "we are convinced that the particular circumstances of this case might make the enforcement of the equitable remedy of seniority integration impractical such that an alternative money damage award would be appropriate." 125 F.3d at 136. *Continental* to be sure was not a 363(f)(5) situation, like *Trans World* was, but it does at least show those courts' receptivity to the argument being made by the trustee in this case. *Trans World* would seem to say that if the property interest was "subject to monetary valuation" 363(f)(5) would be satisfied. Slightly differently, *Continental* would seem to reason that if the particular circumstances of the case make injunctive type enforcement "impractical," 363(f)(5) would be satisfied.

The broad definition of "property" as used in 363(f), as noted, has been construed so to make it unnecessary to here decide if the Builder Restriction is personality or realty. In one sense, it is analogous to a contract made in advance with whomever becomes the owner of the property, that the owner will contract with the developer or its assigns to construct the improvements on the property, i.e.; essentially an executory contract. On this point, it is interesting to note that in *Gouveia*, the trustee argued that the restriction involved was not an "interest in property," but rather an executory contract governed by 365 of the code and thus outside of the 363(f)(5) inquiry. In affirming the bankruptcy court's conclusion that the covenant was not an executory contract, the Court emphasized that it required "no affirmative performance in the future," and, as a covenant recorded at the time of the conveyance, there was really "nothing further to be done by either party, the contract (if it be so characterized) was fully executed." *Id.* at 298. While the trustee did not choose to make the executory contract argument in this case it might not be an unreasonable position, given the nature of the Builder Restriction at issue, as distinguished from the covenant in *Gouveia*. In this case, the very essence of the Builder Restriction is the future performance by the developer of the construction agreement, i.e.; what the Builder Restriction contemplates is that if and when the owner of the lot decides to erect a home or other improvement, he then has to sit down and enter into a construction agreement with the developer. Aside from conformity with the various general restrictions involved (which are the same no matter who constructs the improvements) the questions of architecture, size, configuration, nature of materials, total costs, number and nature of rooms, landscaping, etc., are left to the owners' choices as incorporated in a mutually approved future construction agreement between the developer/builder and the owner of the lot—an agreement to agree as it were. One could not really imagine anything more executory than that as of the time of the sale of a lot (unless one arbitrarily limits the scope of the inquiry to the bare existence of the Builder Restriction itself). Therefore, an executory contract assertion does arguably present a viable and alternative way of possibly disposing of the matter before the Court in a manner favoring the trustee's motion.

On the other hand, the Builder Restriction also does smack of an interest in realty—if for no other reason than is arises from, and is part of, a comprehensive and integrated body of restrictions governing a real property subdivision. As to such, Michigan has enunciated a policy of generally enforcing valid real property restrictions by injunction, and without particular regard to the damages involved. *See Webb v. Smith*, 224 Mich.App. 203, 568 N.W.2d 378 (1997). The enunciated exceptions to that policy are: (1) "technical violations and absence of substantial injury; (2) changed conditions; and (3) limitations and laches." *Webb v. Smith, supra* at 211, 568 N.W.2d 378. There does not appear to be total clarity as to whether restriction enforcement by injunction in Michigan goes by different rules than those applicable to obtaining injunctions or equitable relief generally i.e., by balancing the equities involved. For instance, in a case where a party sought an injunction to enforce riparian rights, after stating that the lower court judge did not err in balancing the equities the appellate court stated the "general rule" is that "the court will balance the benefit of an injunction to plaintiff against the inconvenience and damage to defendant, and grant an injunction or award damages as seems most consistent with justice and equity under all of the

circumstances of the case." *Kernen v. Homestead Development Company,* 232 Mich.App. 503, 514, 591 N.W.2d 369 (1998). That court then went on to enumerate some seven different factors to take into account in determining the propriety of issuing an injunction. *Id.* In the earlier *Webb* case, that same court, (and indeed that same judge), opined that the lower court did not err in *failing* to apply a balancing test. *Webb v. Smith, supra* at 211, 568 N.W.2d 378. As this Court does not see a material difference between enforcing riparian rights and enforcing property restrictions, there should not be any real difference between the two in determining the propriety under the circumstances of issuing an injunction, or, in lieu thereof, awarding damages. (Keeping in mind we are not talking here about awarding damages incidental to also awarding specific performance.) What this Court concludes are involved are traditional and classic equity/law principles, a crucial one of which is the availability, or lack thereof, of an adequate remedy at law to wit: damages. If that is so, than the *Kernen* court's view is closer to the mark, but presumably only in situations where the damage remedy is available and reasonably ascertainable.

Exploring the law further, the Restatement of the Law of Property Third, Servitudes, 8.3, dealing with the issue of Availability and Selection of remedies for Enforcement of a Servitude (property restrictions and the like being within what is defines as a "servitude") says the following:

(1) a servitude may be enforced by any appropriate remedy or combination of remedies, which may include declaratory judgment, compensatory damages, punitive damages, nominal damages, injunctions, restitution, and imposition of liens. Factors that may be considered in determining the availability and appropriate choice of remedy include the nature

and purpose of the servitude, the conduct of the parties, the fairness of the servitude and the transaction that created it, and the costs and benefits of enforcement to the parties, to third parties and to the public.

In the following comments, the authors note the interests of both the dominant or servient owner and state at pp. 496 and 497: "while both are usually entitled to protection by injunction, monetary relief with protective conditions may be appropriate where legitimate interests of both can be accommodated without seriously compromising the interests of either or frustrating the purpose for which the servitude was created," and "if specific performance is not practicable, or is otherwise undesirable, a prohibitory injunction might be fashioned to accomplish the objective. If a substitute performance can be readily obtained, a judgment for damages may be satisfactory."

The recorded conditions, covenants and restrictions in this case are extensive and comprehensive. They provide for building requirements and approvals by an Architectural Control Committee as to plans, designs, shapes of improvements and require that they harmonize with the land and other homes in the area; they contain detailed limits and specifications as to various matters; membership on the Architectural Control Committee is controlled in important ways by the developer; they provide for rights of first refusal in favor of the developer, maintenance standards, limitations on storing various types of vehicles; and directions, limitations, and specifications relating to almost every aspect of maintenance and utilization of the property, as well as detailed directions as to kinds and types of materials which can be used in connection with construction of improvements and the timing and manner in and by which such must be accom-

plished. Indeed, their very detailed and comprehensive parameters belie any argument that the identity of the improvement contractor is a crucial part of the plan-given the reduced discretion and decision making that conformity with these restrictions produces. Almost any experienced, reputable, and responsible contractor can construct the improvements on the property in accordance with these restrictions and absent the Builder Restriction, the issue would more than likely just be one of price and the contractor's reputation and track record. The restrictions themselves provide the necessary comfort to the other owners in the subdivision and in this situation the identity of the contractor constructing any improvements is much less important than the requirement that whoever the contractor is comply with the restrictions. That is the principal way in which the mutual interests of all of the owners are served. The restriction in *Gouveia*, i.e., the limitation to residential use, can really only be appropriately protected and enforced by classic injunctive equitable relief. On the other hand, the Builder Restriction involved here is primarily and almost exclusively one which benefits only the developer or its successor in interest, and as such primarily if not exclusively involves the ability to make a profit under a construction agreement—something which does not inure to, or confer a material benefit on any other lot owner. The inevitable conclusion is that what we have here is more in the nature of a potential construction contract between an owner and the developer's successor, which while cast in the form of a property restriction, nevertheless easily lends itself, if breached, to monetary remedies, made even more so here by the fact that what is really involved is an agreement to agree, not even the construction agreement itself. It is not dissimilar to what the situation would be if we were in fact dealing with a signed home construction agreement with respect to which the lot owner changed his mind before construction even started. There would be little or no argument in that situation but that the contractor would not be entitled to specific performance, but would be entitled to damages, the primary measure of which would be the profit the contractor would have earned on the job had he been allowed to perform under the contract. That damages are sufficiently readily enough calculable is reinforced by the ability of the parties to the sales of the other lots, to have allocated a specific sum and value to the same Builders Restriction. Under the legal principles cited, that is the conclusion the Court comes to in this case. Damages can be seen as a fully compensatory readily calculable alternative remedy to an impractical specific performance possibility, which the contractor can be compelled to take and which would at once make the developer whole as to that particular lot, and not cause any, or any significant, adverse affect to the other lot owners in the subdivision, whose interests are adequately protected by required adherence by any owner and that owners contractor (be it the developer or someone else) to the various applicable subdivision restrictions.

■ Roods remaining arguments are not meritorious. No waiver of the right to object on the part of LCBTC arises from its failure to have objected to the sale of the Builder Restriction rights incident to the sale of the properties other than what are involved here. Quite aside from the fact that it is the trustee who is the main objector here and surely he cannot be held to have waived his right to do what he is attempting to do here, keeping in mind that selling the rights is one thing, and whether or not they can be satisfied by damages as opposed to specific performance is quite another. No one is taking position that somehow the Builder Restric-

tion rights have or are going to disappear altogether. As to considering the rights of the other property owners in the subdivision, they were taken into account and discussed in the course of the foregoing analysis. As to the applicable government, specifically township interests alleged, no one is here taking the position that the granting of the trustees motion excuses LCBTC or its successors from complying with applicable ownership ordinances or any of the subdivision restrictions not implicated in the narrow scope of this decision, a decision which arises solely under a specific provision of the bankruptcy law, and one which is not inconsistent with even a township ordinance that might specifically prohibit what this Court is doing, keeping in mind that (a) no such ordinance has been pointed out, and (b) the bankruptcy code provision would override it in any event.

This decision is not to be seen or construed as terminating or voiding the Builder Restriction. All that is concluded here is that incident to the transfer contemplated by the Trustee's Motion, that transfer can be effected so that the transferee takes the property involved free of the Builder Restriction. However, the holder/beneficiary of the Builder Restriction is entitled to recompense from the trustee transferor, in the same way that a transfer of property free of a lien for instance, results in that lien being transferred to the proceeds, from which is effected payment or recompense in accordance with what the priorities were prior to the transfer.

The trustee shall prepare and present an order consistent with this Opinion.