# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* STELLA D. JACKSON LIVING TRUST.

---

WELLS FARGO BANK, N. A., Trustee of the
STELLA D. JACKSON LIVING TRUST,
PATRICIA SEELEN, ANDREA JACKSON, and
HOLLY JACKSON,

       Appellees,

v

JAMES C. JACKSON,

       Appellant.

UNPUBLISHED
October 22, 2015

No.   321070
Marquette Probate Court
LC No.   10-031838-TV

---

*In re* CLIFFORD W. JACKSON & STELLA D.
JACKSON REVOCABLE LIVING TRUST.

---

WELLS FARGO BANK, N. A., Trustee of the
CLIFFORD W. JACKSON & STELLA D.
JACKSON REVOCABLE LIVING TRUST,
PATRICIA SEELEN, ANDREA JACKSON, and
HOLLY JACKSON,

       Appellees,

v

JAMES C. JACKSON,

       Appellant.

No.   321072
Marquette Probate Court
LC No.   10-031839-TV

---

Before:  M. J. KELLY, P.J., and MURRAY and SHAPIRO, JJ.

-1-

PER CURIAM.

In this case concerning trust documents and the intent of the settlor, now deceased, appellant, the decedent's son and possessor of a residual interest in the decedent's estate, appeals as of right from the probate court's order interpreting the trusts here at issue to grant duplicate gifts to the individual appellees, the decedent's granddaughters. We reverse and remand for entry of an order consistent with this opinion.

## I. FACTS

This case returns to this Court after an earlier claim of appeal resulted in a remand. This Court's earlier opinion set forth the underlying facts:

On August 1, 1997, Clifford Jackson and Stella Jackson signed a trust agreement creating the [Clifford W. Jackson and Stella D. Jackson Revocable Living Trust (CJRLT)] and jointly conveyed unspecified property to the trust. Wells Fargo's predecessor was named the trustee . . . .

In paragraph SECOND, the Settlors retained the "right to use or to direct the payment of any part or all of the net income and the principal of this trust" for any purpose, as well as the right to "revoke or amend [in writing] this instrument . . . [which] is personal to the Settlor, or the survivor thereof." In paragraph THIRD, the agreement stated that, upon the death of either Settlor, the assets of the CJRLT would be divided into two separate trusts: (1) the Family Trust; and (2) the Marital Trust. While the Family Trust contained a provision for gifts to beneficiaries, the Marital Trust contained no similar provision. After the distributions were made, the remaining assets were to be distributed in equal shares amongst the Settlors' surviving children. . . .

The CJRLT subsequently was amended several times to provide for additional distributions upon the death of the Settlors. On December 9, 1998, the Settlors amended paragraph THIRD of the CJRLT to change the amount provided for each of their surviving grandchildren in the Family Trust from $100,000 to $250,000. The Settlors made a second amendment on the same day, amending paragraph SECOND of the CJRLT to include distributions to the following beneficiaries: (1) $100,000 to Bethel Lutheran Church (upon Clifford's death); (2) $100,000 to St. John Church (upon Stella's death); (3) $100,000 to Ishpeming School Board; and (4) $5,000 to the Salvation Army. On July 26, 2000, the Settlors made a third amendment to the CJRLT, amending paragraph THIRD by adding a $5,000 distribution from the Family Trust to Shawn Jackson (a grandson) upon the death of both Settlors. On May 9, 2001, the Settlors made their final joint amendment to the CJRLT, requiring that any distribution due to John W. Jackson be held in trust and distributed pursuant to the trustee's discretion. . . .

Clifford Jackson passed away on March 3, 2003. To acquire preferential tax treatment for the assets that, pursuant to the provisions of the CJRLT and by

virtue of Clifford Jackson's death, were placed into the Family Trust, Stella Jackson signed, on November 13, 2003, a document captioned "Disclaimer." The Disclaimer specifically noted that paragraph SECOND of the CJRLT could potentially be interpreted to render taxable the assets distributed to the Family Trust. In signing this document, Stella Jackson declared her intent as follows:

> My intent in executing this disclaimer is to insure that the assets distributed to the FAMILY TRUST do not qualify for the marital deduction, rather, that these assets be fully taxable in the federally taxable estate of Clifford W. Jackson and fully utilize his applicable exclusion amount under the Code.

Stella Jackson then stated:

> With due consideration of the foregoing, I irrevocably and unqualifiedly disclaim any and all rights that I may have under the terms of Paragraph SECOND of the trust, specifically, I disclaim the right to use or direct the payment of any part or all of the net income and the principal of trust assets under that Paragraph as well as the ability to revoke or amend the Trust.

Stella Jackson explicitly exempted from disclaimer: (1) any of her rights under the Marital Trust; and (2) her right to receive income from the Family Trust. . . . Stella Jackson executed and delivered this Disclaimer to the trustee (Wells Fargo), who accepted it and, by virtue of the disclaimer of any "ability to revoke or amend the Trust," treated the CJRLT as irrevocable. . . .

On May 10, 2005, Stella Jackson signed a document creating the [Stella D. Jackson Living Trust (SJLT)], which purported to "amend and restate" the CJRLT "in its entirety" . . . . Wells Fargo was appointed trustee for this trust. The distributions and inheritance to the Settlors' children specified in Article V of the SJLT were substantially, although not entirely, identical to those stated in the CJRLT, except that the manner of distribution differed slightly, and the SJLT also added a $5,000 distribution to St. Vincent DePaul. Since Wells Fargo treated the prior Disclaimer as having rendered the Family Trust irrevocable, it subsequently administered both the CJRLT and Stella Jackson's new SJLT as two independent trusts. The annual statements indicated the existence and maintenance of two separate trusts; these documents had been provided to Stella Jackson since 2004/2005 . . . .

Stella Jackson passed away on March 6, 2009; afterwards, Wells Fargo made distributions from the two separate trusts (instead of one single, fully restated trust), since it believed the Family Trust in the CJRLT was irrevocable. This resulted in additional payments to the Settlors' grandchildren totaling $755,000. On September 16, 2009, Appellant James Jackson contacted Wells Fargo via phone and expressed concern over the additional distributions that he noticed in the August 2009 annual statements; he threatened legal action. . . .

In 2010, Wells Fargo filed these petitions with the probate court, asking the court to: (1) authorize the contested distributions and approve Wells Fargo's administration of the trust; (2) provide instructions on how to proceed; and (3) discharge Wells Fargo as trustee once all funds were distributed. Appellants objected . . . .

The probate court issued an opinion and order, noting that the primary issue in this case was the validity of the Disclaimer. However, the court determined that it was the effect of the language purporting to renounce Stella Jackson's right to amend the CJRLT—not the fact that it was titled "Disclaimer"—that was relevant to this case. The court found that Stella Jackson had effectively renounced her right to amend the CJRLT, and it therefore (1) decided that the SJLT was ineffective in restating the Family Trust portion of the CJRLT; and (2) found the distributions made by Wells Fargo from the Family Trust and the SJLT to have been authorized. [*In the Matter of the Clifford W Jackson & Stella D Jackson Revocable Living Trust*, unpublished opinion per curiam of the Court of Appeals, issued October 16, 2012 (Docket No. 302489), pp 2-5 (selected parentheticals omitted).]

This Court concluded that the "Disclaimer," though imperfectly labeled,[1] "operated as an amendment to the CJRLT." *Id.* at 6. This Court further identified the clear intent of the settlors in providing for the creation of the Family and Marital "sub-trusts" as "to . . . take advantage of certain federal tax exemptions at death, while still providing support for the surviving spouse." *Id.* at 8. This Court additionally identified as the clear intent behind the Disclaimer "to insure that the assets of the Family Trust were not Stella's assets, but rather were included in Clifford Jackson's estate (with applicable exclusions), for tax purposes." *Id.*

This Court affirmed the trial court's determination that the Disclaimer effected an amendment of the CJRLT, but held that the trial court "improperly limited the effect of the Disclaimer amendment" by failing to appreciate that "Stella Jackson had not merely eliminated her ability to further amend the Family Trust that had been created under the CJRLT, but rather had eliminated her ability to amend 'the Trust,' " meaning the entire CJRLT. *Id.* at 10. This Court agreed with the trial court that the Disclaimer operated as a renunciation of Stella Jackson's right to amend the CJRLT, but held that as the result of that operation "the SJLT was ineffective." *Id.* This Court additionally noted that "Stella Jackson retained all rights given to her under paragraph THIRD of the CJRLT, including 'the power to appoint all or any part of the principal of the Marital Trust[,]' but opined that "it is impossible to ascertain from the SJLT any intent to make such an appointment in creating the SJLT." *Id.* Accordingly, this Court held that the trial court correctly determined that the trustee's distributions from the Family Trust were

_____

[1] This Court noted that "Stella Jackson did not disclaim her 'survivorship interest in joint property' " in the sense that "disclaim" is normally used in the estate context, but rather relinquished "her own right to amend or revoke the CJRLT." *In the Matter of the Clifford W Jackson & Stella D Jackson Revocable Living Trust*, unpub op at 6.

authorized, but that the court "erred in finding authorized the distributions by the Trustee from the SJLT." *Id.* This Court thus vacated the trial court's decision and remanded this case for further proceedings consistent with its opinion. *Id.*

On remand the granddaughters petitioned the trial court to reform the Disclaimer so that it would apply to only the Family Trust component of the CJRLT, not the Marital Trust, on the ground that this reading better comported with Stella Jackson's intent. Following an evidentiary hearing, the court concluded that "there was clear and convincing evidence that Stella Jackson intended to have the Disclaimer affect the Family Trust only and to make two distributions of $250,000 to her Granddaughters—one via the CJRLT and one via the SJLT." The court continued as follows:

> The Disclaimer, as an amendment to the CJRLT, is ordered to be reformed . . . so that only the family portion of the CJRLT is deemed irrevocable. Having found it was Stella's intent to only disclaim the family portion of the CJRLT, the SJLT would not be ineffective and would allow Stella's intent to be carried out. The distributions to the Granddaughters as well as distributions to Shawn Jackson, St. John's Church, Ishpeming Schools, Salvation Army, and St. Vincent de Paul, will be allowed.

This appeal followed.

## II. LAW OF THE CASE

Appellant argues that the trial court on remand departed from this Court's earlier opinion in violation of the doctrine of law of the case. As a question of law, this Court decides de novo whether a trial court correctly followed this Court's remand order. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

> Under the law of the case doctrine, an appellate court ruling on a particular issue binds the appellate court and all lower tribunals with regard to that issue. The law of the case mandates that a court may not decide a legal question differently where the facts remain materially the same. The doctrine applies to questions specifically decided in an earlier decision and to questions necessarily determined to arrive at that decision. [*Webb v Smith*, 224 Mich App 203, 209; 568 NW2d 378 (1997) (citations omitted).]

Accordingly, "[i]t is the duty of the lower court . . . , on remand, to comply strictly with the mandate of the appellate court." *Schumacher*, 275 Mich App at 128 (internal quotation marks and citation omitted). "A trial court fails to follow the law of the case when it revisits a matter on which this Court has already ruled." *Id.*

### A. REFORMATION OF DISCLAIMER

The trial court granted the granddaughters' motion to reform the Disclaimer under the authority of MCL 700.7415, which provides as follows:

-5-

The court may reform the terms of a trust, even if unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement.

The trial court stated, "Having found it was Stella's intent to only disclaim the family portion of the CJRLT, the SJLT would not be ineffective and would allow Stella's intent to be carried out." The court thus treated the Disclaimer as having amended the CJRLT to render only its resulting Family Trust no longer subject to amendment or revocation, leaving Stella Jackson free to amend, revoke, or restate the Marital Trust by way of establishing the SJLT.

We hold that the trial court erred in treating the scope of the Disclaimer as a question subject to determination on remand. This Court, after concluding that the Disclaimer was in fact a valid amendment to the CJRLT, went on to state as follows: "The question then becomes whether the amendment rendered the CJRLT irrevocable by Stella Jackson, and not subject to further amendment, and thus not able to be amended and restated as the SJLT. We conclude that it did." *In the Matter of the Clifford W Jackson & Stella D Jackson Revocable Living Trust*, unpub op at 7. This Court thus decreed that the Disclaimer entirely extinguished Stella's prerogative to amend the CJRLT, including by way of attempting to restate it through a successor trust whose terms at all departed from those of the original trust. This Court elaborated as follows:

By the Disclaimer, Stella Jackson had not merely eliminated her ability to further amend the Family Trust . . . , but rather had eliminated her ability to amend 'the Trust.' . . . [T]he Disclaimer amendment defined the "Trust" as the CJRLT (not as the Family Trust). Consequently, as a purported amendment of the CJRLT, the SJLT was ineffective in its entirety." [*Id.* at 10.]

This Court's categorical statement that the Disclaimer rendered Stella Jackson powerless to amend the entire CJRLT did not leave open the option in further proceedings of determining whether the Disclaimer was intended to apply to only the Family Trust.

Concerning the trial court's decision to give force to the SJLT, the court stated, "The Court of Appeals was clear in its finding that as a trust, the SJLT was ineffective. The Court of Appeals did not go further and find what, if anything, the SJLT was." The trial court then recognized as still open questions, "Was it . . . an expression of Stella's intent that she give the contested second specific gift of $250,000 to each Granddaughter or was the SJLT . . . merely a restatement of the CJRLT and was Stella Jackson simply amending the entire joint trust to change her son John's distribution and add a new charitable gift to St. Vincent de Paul?" This Court, however, held that "[b]y its terms, the SJLT . . . purports to 'amend[] and restate[] [the CJRLT] in its entirety." *Id.* (bracketed interpolations in the original). This Court thus identified the intent behind the SJLT, therefore answering what the trial court on remand regarded as a question still pending.

Despite acknowledging this Court's determination that the Disclaimer rendered the subsequent SJLT without effect, the trial court nonetheless took evidence to arrive at factual determinations supporting an equitable decision to reform the Disclaimer to mean something

-6-

other than what this Court decided it meant, with the effect of reviving the SJLT as an independent trust, which this Court had declared an ineffective attempt to amend the CJRLT. Because this Court determined without equivocation that the Disclaimer rendered the entire CJRLT not subject to amendment, not just that part of it that established the Family Trust, the trial court erred in treating the scope of the Disclaimer as a question that remained open. The court then compounded the error by answering the question in a way at variance with our previous conclusion, then using that result as a means of declaring the SJLT to be something other than what we declared it to be, and thus giving effect to what this Court had declared ineffective. For these reasons, we conclude that the trial court failed to abide by the law of the case.

## B. POWER OF APPOINTMENT

The trial court alternatively held that the SJLT was effective as an instrument Stella Jackson created pursuant to the power of appointment she retained under the provisions of the CJRLT.

Paragraph THIRD of the CJRLT granted the surviving testator an unlimited power of appointment with regard to the principal of the Marital Trust, and Stella Jackson's Disclaimer expressly reserved the rights granted in that paragraph.

MCL 556.112(c) defines "power of appointment" as used in this area of the law:

> "Power of appointment" means a power created or reserved by a person having property subject to his or her disposition that enables the donee of the power to designate, within any limits that may be prescribed, the transferees of the property or the shares or the interests in which it shall be received. The term power of appointment may include a power of amendment or revocation, but does not include a power of sale or a power of attorney.

"[W]hen a donor grants a donee power of appointment over certain specified property, the donee gains the right to specify who will receive that property." *In re Estate of Reisman*, 266 Mich App 522, 528; 702 NW2d 658 (2005). MCL 556.114 in turn provides, in pertinent part, as follows:

> Unless otherwise provided in the creating instrument, an instrument manifests an intent to exercise the power if the instrument purports to transfer an interest in the appointive property that the donee would have no power to transfer except by virtue of the power, even though the power is not recited or referred to in the instrument, or if the instrument either expressly or by necessary implication from its wording, interpreted in the light of the circumstances surrounding its drafting and execution, manifests an intent to exercise the power.

In our earlier opinion, we considered whether the SJLT might be considered an exercise of Stella Jackson's power of appointment and concluded that "[a]lthough Stella Jackson retained all rights given to her under paragraph THIRD of the CJRLT, which includes 'the power to appoint all or any part of the principal of the Marital Trust[,]' it is impossible to ascertain from

the SJLT any intent to make such an appointment in creating the SJLT." *In the Matter of the Clifford W Jackson & Stella D Jackson Revocable Living Trust*, unpub op at 10. The granddaughters argue that this latter statement "clearly appears to be inviting an MCL 556.114 analysis by the Probate Court upon remand." We conclude otherwise. Had this Court identified inconclusive hints at, or perhaps conflicting indications regarding, such intention, then the trial court on remand might have reasonably interpreted this Court's decision as recognizing the existence of a question that might be answered on remand. But "impossible to ascertain . . . any intent to make such an appointment" means there was no indication whatsoever of an exercise of the power of appointment. In fact, this Court was not identifying the existence of any such question, but rather the lack of one. This Court did not need to fall back on MCL 556.114's default where a donee purports to transfer an interest that the donee would otherwise have no power to transfer, because this Court was satisfied, in light of the circumstances surrounding the drafting and execution of the pertinent documents, that Stella Jackson was endeavoring with the SJLT to amend and restate the CJRLT, not to establish an entirely new trust from the assets she controlled from the Marital Trust.

In sum, this Court previously considered the possibility that the SJLT was indeed a new and independent trust created as an exercise of Stella Jackson's power of appointment, as set forth in the CJRLT and retained by the terms of the Disclaimer, and rejected it. That determination thus was, and remains, law of the case. For these reasons, we conclude this alternative basis for the results the trial court reached on remand also departed from the law of the case.

III. CLEAR AND CONVINCING EVIDENCE OF STELLA JACKSON'S INTENT

Appellant also challenges the trial court's factual findings concerning Stella Jackson's intentions.[2] We review a trial court's findings of fact for clear error. *Chapdelaine v Sochocki*, 247 Mich App 167, 169; 635 NW2d 339 (2001). Reviewing a trial court's factual findings for clear error is, of course, a deferential undertaking. See *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). "Clear error exists where, after a review of the record, the reviewing court is left with a firm and definite conviction that a mistake has been made." *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002). However, the challenged findings required satisfying the stringent evidentiary standard of clear and convincing evidence. See MCL 700.7415. Our Supreme Court has described clear and convincing evidence as evidence that "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established," in other words "evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (internal quotation marks and citation omitted).

The trial court clearly erred in finding clear and convincing evidence that Stella Jackson intended to make two distributions of $250,000 to her granddaughters. At the evidentiary

---

[2] Although our resolution of the law of the case issue makes this issue unnecessary to decide, we do so anyway for the sake of completeness.

hearing, none of the witnesses were able to testify that Stella Jackson intended to duplicate gifts. Particularly, Andrea Jackson, Holly Jackson, and Patricia Seelen could not recall having a discussion with Stella Jackson regarding any intent to distribute an additional gift of $250,000 to the granddaughters. Larry Argall, the certified public accountant who addressed the tax concerns after Clifford's death, Ken Seavoy, the attorney who drafted the Disclaimer and the SJLT, and Mary Nurmi, the trust officer who assisted in administration of the CJRLT, could either not recall discussing or never discussed with Stella Jackson whether she intended to give each granddaughter $250,000 or $500,000 upon her death. The only person that was able to testify regarding Stella Jackson's intent was John Jackson, who testified that Stella Jackson did not intend to make two distributions to the granddaughters. Furthermore, the SJLT itself does not indicate that Stella Jackson had the intent to duplicate gifts to the granddaughters. The first page of the SJLT includes the announcement, "IT IS AGREED THAT THE [CJRLT] is amended and restated in its entirety to read as follows," thus indicating that Stella Jackson did not intend to create a new, duplicate gift of $250,000 to each granddaughter, but rather indicating that her intent was to merely restate her original gift of $250,000 to each granddaughter. Accordingly, the trial court clearly erred in finding clear and convincing evidence that Stella Jackson intended to make two distributions of $250,000 to her granddaughters.

Reversed and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction. Appellant may tax costs having prevailed in full on appeal. MCR 7.219(A).


/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro