# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

FREDERICK FREEMAN,

       Defendant-Appellant.

UNPUBLISHED
July 30, 2015

No. 311257
St. Clair Circuit Court
LC No. 86-128340-FC

Before: SAAD, P.J., and M. J. KELLY and SHAPRIO, JJ.

PER CURIAM.

Defendant, Frederick Freeman, appeals by leave granted the trial court's opinion and order denying his motion for relief from judgment. On appeal, Freeman contends that he is entitled to a new trial on the basis of differences, which he characterizes as newly discovered, between the photos used by police officers in photographic lineups and the trial exhibit created from those photos. Freeman argues that his photo was so distinct from the other five "fillers" that the photo lineup was impermissibly suggestive. The original photos were not shown to the jury at trial. Instead, the prosecution prepared a composite exhibit—exhibit 26—that used enlarged but cropped versions of the mug shots from the lineups. Freeman maintains the sanitized versions of the original photos effectively bolstered the credibility of the witnesses' identifications. Given the implications from these newly discovered photos, Freeman argues the trial court erred when it determined that he was not entitled to relief from judgment. We, however, conclude there were no errors warranting relief. Accordingly, we affirm.

## I. PROCEDURAL HISTORY

### A. PRETRIAL AND TRIAL

This case has its origins with the shooting death of Scott Macklem in November 1985.

At the preliminary examination held in November 1986, Richard Krueger testified that he went to the Port Huron Police Department the day after the shooting and a detective showed him five photos. From these photos, Krueger identified Freeman as the individual he saw lurking in the bushes near the scene of the shooting. Similarly, Rene Gobeyn testified that he went to the police station where detective John Bowns asked him to view approximately five photographs. He was certain that the third photo he viewed depicted the person he saw driving out of the parking lot.

-1-

The then-prosecutor, Robert H. Cleland, explained at a hearing that the prosecutor's office maintained an "open file" policy regarding discovery in criminal cases. He stated that the defense had access to the prosecutor's file and will have "whatever I have."

At Freeman's trial in 1987, Bowns testified about the photos used in the lineup and the creation of exhibit 26. He explained to the jury that the five photographs compiled in exhibit 26 came out of the "mug file." He showed the original photographs to Krueger and Gobeyn on November 7, 1986. He stated that he would have handed the photographs to the witnesses in a stack, like a deck of cards. When Gobeyn went through the "deck" and reached Freeman's picture, he said, "That is him right there. That is positively him." Similarly, when Krueger reached Freeman's picture, he remarked, "That's him, if only he had a beard."

At trial, Freeman presented an alibi defense; specifically, he presented evidence that, if believed, tended to show that he was in Escanaba in Michigan's Upper Peninsula at the time of the shooting. The jury rejected Freeman's alibi defense and convicted him of first-degree murder. See MCL 750.316. The trial court sentenced Freeman to serve life in prison without the possibility of parole.

## B. STATE POST-CONVICTION PROCEEDINGS

Freeman appealed his conviction in 1987. On appeal, this Court remanded the case to the trial court for an evidentiary hearing.[1] At the hearing, Freeman's lawyer stated in passing that he had requested copies of the original photos used in the photographic lineup. In response, the prosecutor represented that a search had been made for the photographs, but they were not located. When the hearing resumed on a later date, Bowns was questioned about the photographs. He indicated that he did not know where the photographs were. This Court affirmed Freeman's conviction on appeal in 1993.[2]

In 2004, Freeman moved for relief from judgment under MCR 6.500 *et seq.*, which the trial court denied in January 2005. This Court denied Freeman's petition for leave to appeal that order in August 2005.[3]

Freeman again moved for relief from judgment in 2012. He argued that he was entitled to a new trial on the basis of the newly discovered original photos, which revealed the discrepancies between the photos and exhibit 26. In February 2012, the trial court determined that this motion was not premised on newly discovered evidence or a retroactive change in the law and, on that basis, denied it as an improper successive motion for relief from judgment. See

---

[1] *People v Freeman*, unpublished order of the Court of Appeals, entered June 30, 1990 (Docket No. 103276).

[2] *People v Freeman*, unpublished opinion per curiam of the Court of Appeals, issued September 13, 1993 (Docket No. 103276).

[3] *People v Freeman*, unpublished order of the Court of Appeals, entered August 16, 2005 (Docket No. 260864).

MCR 6.502(G)(2). This Court denied Freeman's delayed application for leave to appeal in May 2013.[4]

Freeman applied for leave to appeal in our Supreme Court and, in lieu of granting leave to appeal, our Supreme Court remanded the case to this Court for consideration as on leave granted. The Supreme Court further directed this Court to remand the case to the trial court for an "evidentiary hearing to determine whether the issue raised by the defendant merits the relief requested." *People v Freeman*, 495 Mich 905; 839 NW2d 492 (2013). This Court ordered the remand and the trial court held the hearing over two days in March 2014.[5]

Port Huron police officer and current private investigator Herbert Welser testified that in January 2008, he reviewed the evidence in this case. At that time, Welser located the original photos that were shown to the eyewitnesses as part of a photographic lineup. These same photos were cropped and used to create exhibit 26. Each photo was a portrait of the subject in profile. In the uncropped originals, Freeman is holding a placard with Pleasant Ridge Police Department on it. The other individuals are holding placards bearing "Port Huron Police Department." In the profile pictures, Freeman is turned to his right, while the other subjects are turned to their left. Further, horizontal stripes are shown in the background of Freeman's picture, but the other photos have a white background. The mug shots from the Port Huron are also faded. Welser admitted that the photographs were not representative of how they looked in 1986.

Ralph Simpson testified that he represented Freeman on his direct appeal. Challenging the eyewitness testimony was part of his appeal strategy. He had not seen exhibit 26 or the original mug shots. He requested copies of the original photos from Bowns, but was told that they could not be found. He also did not see or find copies in Freeman's trial lawyer's files.

John Maire testified that he filed a motion for relief from judgment on Freeman's behalf in 2004. As part of his preparation, Maire requested the original photos. In its response, the police department indicated that the photographs "are not in the possession of this department."

At the evidentiary hearing, Freeman sought to introduce the testimony by a psychologist specializing in eyewitness identification, Jennifer Dysart. The prosecution objected, but the trial court allowed Freeman to call Dysart in an offer of proof. Dysart testified that the differences between Freeman's mug shot and the filler mug shots resulted in the differences drawing attention to him. Dysart opined that the cumulative effect of these differences could have affected the reliability of Gobeyn and Krueger's identifications. Dysart characterized the lineup as "highly suggestive." She further opined that the phenomenon of "mug shot commitment" made the initial identification most important. Ultimately, however, Dysart concluded that there

---

[4] *People v Freeman*, unpublished order of the Court of Appeals, entered May 30, 2013 (Docket No. 311257).

[5] *People v Freeman*, unpublished order of the Court of Appeals, entered December 19, 2013 (Docket No. 311257).

was no way to know if the differences between the mug shots influenced Gobeyn and Krueger's identifications.

Cleland, who was now a United States District Court Judge, testified that he was the prosecuting attorney who prosecuted Freeman in 1986. At that time, he employed an "open file" policy whereby everything in an investigation file was to be made available to the defense. Freeman's trial lawyer, David Dean, was invited several times to make an appointment to review the file. Cleland admitted that he used exhibit 26, rather than the individual mug shots, because he believed that the cropped photos were less prejudicial. Cleland could not recall if he ever saw the individual mug shots used in the lineup, but he believed that he did because he was the one who directed the detectives to create exhibit 26.

The trial court admitted Dean's affidavit at the hearing. In this affidavit, Dean stated that he "viewed the photographs utilized by law enforcement officers for purpose of conducting photographic lineups with multiple witnesses in the case" and "he was aware that [the] prosecutor at trial had mounted the photographs utilized in the lineups on a larger board for display to the jury."

Dean also testified at the hearing and explained that, before trial, he was looking for ways to discredit the eyewitness identifications. He stated several times that he could not recall if he had seen the original mug shots before trial. As a general rule, however, if he knew that a photo lineup had occurred, he would have wanted to review those photos. Dean believed that there was no reason to think that he would not have followed that practice in this case.

With respect to his affidavit, Dean did not recall signing an affidavit that said he had seen the photos. He did not know why he would sign such an affidavit in light of the fact that he did not recall if he had ever seen them. Dean acknowledged that he and Cleland had a good working relationship and that Cleland "always allowed an open door policy for discovery." He was permitted an opportunity to look at all of the evidence, not just the photographs. He further acknowledged that the police department allowed him unfettered access to the evidence. On multiple occasions, including during the trial, Dean had an opportunity to view the evidence.

As part of an offer of proof, Dean testified that if he had seen the individual photographs, it is unlikely that he would have objected to the use of exhibit 26. He was not even sure what objection would have been viable. Dean's focus was on attacking Gobeyn's identification because it was allegedly tainted by hypnosis. Dean believed that one of the witnesses was impeachable because he picked out the wrong person at the corporeal lineup. Dean also testified that "had he seen the photographs" he would not have been upset with the cropping and mounting to create exhibit 26 because, in his opinion, the objectionable attributes had been removed.

In November 2014, the trial court denied Freeman's motion for relief from judgment. As a preliminary matter, the court ruled that the newly discovered evidence test set forth in *People v Cress*, 468 Mich 678; 664 NW2d 174 (2003), applied to motions for relief from judgment under MCR 6.502(G)(2). The court stated that, because the evidence was not by definition new evidence, Freeman was not entitled to the requested relief. The court specifically noted that while Freeman may have seen the mug shots for the first time in 2008, this was not the first time

Freeman or his lawyer knew of their existence. The court also held that the alleged new evidence would not have made a different result probable on retrial. The court found that if the photographic lineup had been challenged as impermissibly suggestive, it would not have been successful. The court also noted that Gobeyn was emphatic in his identification of Freeman at the photo lineup so as to make it unlikely that any of the distinguishing features between the mug shots impermissibly influenced his identification.

Next, the court stated that the mug shots at best might have been used for impeachment. However, the court recognized that newly discovered impeachment evidence is generally not grounds for a new trial. Further, the court held that newly discovered impeachment evidence must also satisfy the *Cress* factors and it must be shown that there is an exculpatory connection on a material matter between a witness's testimony at trial and the new evidence and that a different result would be probable on retrial. The court ruled that there did not exist "a sufficient exculpatory connection on a material matter involving a witness's testimony at trial and the alleged new evidence." The court also held that any newly discovered impeachment evidence would not have yielded a different result on retrial because the "claimed newly discovered impeachment evidence" was not compelling.

Finally, the trial court considered Freeman's argument that a successive motion for relief from judgment under MCR 6.502(G)(2) may be considered if it involves constitutional issues and a gateway showing of actual innocence. The court found it unnecessary to decide whether a successive motion is permitted under such circumstances because it concluded that Freeman could not establish a violation of his constitutional rights or his actual innocence. The court ruled that Freeman had failed to establish that the prosecution improperly withheld the photos. The court stated that there was no evidence to support Freeman's claim that the photos were not in the file before the preparation of exhibit 26. The court also found that Freeman could not establish that he was denied the effective assistance of counsel. The court stated that the photo array was not unconstitutionally suggestive and that a decision not to offer the individual photos would have been sound trial strategy because the uncropped photos would have re-emphasized Freeman's prior arrest. Finally, the court concluded that Freeman had not shown actual innocence.

Freeman now appeals as on leave granted the trial court's opinion and order denying his motion for relief from judgment.

## II. MOTION FOR RELIEF FROM JUDGMENT

### A. STANDARDS OF REVIEW

On appeal, Freeman argues that the trial court erred in several respects when it denied his motion for relief from judgment. This Court reviews a trial court's decision on a motion for relief from judgment for an abuse of discretion and reviews the findings underlying its decision for clear error. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). This Court, however, reviews de novo the trial court's interpretation and application of the court rules. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012).

-5-

## B. ORDER ON REMAND

As a preliminary matter, we conclude that the trial court erred to the extent that it determined that Freeman had not met the threshold requirements for making a successive motion for relief from judgment under MCR 6.502(G)(2). Our Supreme Court remanded the case to this Court and ordered it to remand the case to the trial court to "conduct an evidentiary to determine whether the issue raised by the defendant merits the relief requested." *Freeman*, 495 Mich at 905. By remanding the case to the trial court to conduct an evidentiary hearing and make a substantive determination on the claim for relief, which could not be done if the motion were not accepted for filing, our Supreme Court impliedly determined that Freeman's motion met the criteria for a successive motion under MCR 6.502(G)(2). That determination became the law of the case and the trial court had no authority to decide the matter differently. *Webb v Smith (After Second Remand)*, 224 Mich App 203, 209; 568 NW2d 378 (1997) (stating that the law of the case doctrine binds lower tribunals as to legal questions that were specifically decided in an earlier decision or that were necessarily determined to arrive at that decision). Consequently, the trial court should not have considered whether MCR 6.502(G)(2) incorporated the test from *Cress*.

Although the trial court erred when it examined whether Freeman's claim for relief met the criteria under MCR 6.502(G)(2), we conclude that this error does not warrant relief. Despite its ruling, the trial court actually held an evidentiary hearing and considered the merits of Freeman's claim for relief; it analyzed the evidence under the test stated in *Cress*, and determined whether the prosecutor violated due process and whether Freeman's lawyer's handling of the evidence amounted to ineffective assistance. The trial court's determination that Freeman had not established an exception under MCR 6.502(G)(2) was for that reason harmless.

## C. NEW EVIDENCE

Freeman argues on appeal that the trial court erred when it determined that the original photos used in the photographic lineups did not constitute new evidence that warrants relief. In order to obtain a new trial on the basis of newly discovered evidence, a defendant must show that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Cress*, 468 Mich at 692 (quotation marks and citation omitted).

Despite Freeman's arguments to the contrary, there was evidence to support the trial court's findings that Freeman had discovered the photographs before his trial. At the time of the preliminary examination, Krueger and Gobeyn both testified that they participated in a photographic lineup at which time they were shown five uncropped photographs. Then, on the fifth day of trial, Freeman's lawyer referred to the photos used in photo lineup:

Your Honor, prior to bringing in the jury I have one matter I'd like to bring up for the court's attention.

During the examination of, I believe it was Detective Hudson, there was some indication of photographs pursuant to a lineup and/or a photo identification procedure, and, secondarily, a lineup itself, I believe.

Dean's comments were made in the context of requesting a ruling on the scope of Gobeyn's testimony, specifically, whether that testimony would be limited to statements and facts Gobeyn related before the hypnosis session. However, the comments show that Dean knew about the photographic lineups and about the photos used in them.

Perhaps the most telling evidence that Dean knew about the photographs at the time of the trial and appreciated a potential argument related to the allegedly suggestive nature of the lineup, came through the Krueger's testimony. At trial, Krueger testified regarding his participation in a corporeal lineup where he thought the physical environment was hot and uncomfortable. He also stated that he felt uncomfortable because Freeman's lawyer was questioning him at the corporeal lineup about his previous experience with the photographic lineup:

It seemed – first of all, it seemed inappropriate that I had to have the defense attorney there when I was in the lineup, watching a lineup. The second thing was, it was challenging me to the fact that he said, how the – now I cannot quote, I'm paraphrasing, please. He said well, how were the, like, how were the pictures presented to you? Well, I had indicated they were pictures, and he said was one of them kind of, you know, accented or, you know, drawn forward. To me that – it started to kind of get a little, you know, uneasy, because I -- The five photographs were there. I picked out a photograph. That's – that was what I had stated. . . .

On re-cross examination, Dean asked Krueger whether he was saying "I was rude to you?" Krueger responded:

I'm saying that you personally were questioning in relation – and I know that's your right in this thing. I didn't know if it was your right then to see me prior to, did the officers indicate to you whether any of these photographs were more relevant or not, and now whether that word is true or not, you did ask me that, didn't you?

At that point, Dean acknowledged that he asked Krueger such questions about the photographic lineup. Thus, he apparently knew of the existence of the photographs before trial and well before Freeman's first motion for relief from judgment, and recognized the potential for a claim that the photos were themselves suggestive or presented in a suggestive way.

Freeman nevertheless argues that he did not discover the photographs until his private investigator found them in the police department's file in January 2008. The trial court concluded that "while this may be the time Defendant first saw the mug photos used for Exhibit 26, it is not the first time Defendant or his attorney knew of their existence." For purposes of his

-7-

argument that the photographs constituted new evidence, Freeman seems to equate the word "discovered" with "saw," which is not the criteria for determining whether there is new evidence warranting relief. *Cress*, 468 Mich at 692. In any event, there was also evidence that Freeman's lawyer, Dean, actually saw the photographs before the filing of Freeman's first motion for relief from judgment.

There were multiple references to the open file policy that the prosecutor's office employed in 1986. At the time of the 2014 evidentiary hearing, Cleland testified to the open file policy he employed while the elected prosecutor in 1986. From both the trial and evidentiary hearing testimony, it can be inferred that the individual photographs were in the file before trial because it was from these photographs that exhibit 26 was created. Although Dean could not recall if he actually saw the individual photographs, he admitted that he had unfettered access to the police file and had looked at the police file. He further testified that if he knew that a photographic lineup had occurred, he would have wanted to review those photographs and he further believed that there was no reason to think that he would not have followed his practice in this case. Furthermore, even though Dean stated that he did not recall signing it, his 2012 affidavit was admitted into evidence at the evidentiary hearing and in that affidavit he admitted that he had seen the photos:

> 2. In accordance with a Demand for Discovery on behalf of the defendant, I was provided an opportunity to review the physical, photographic and documentary evidence in the custody of the Port Huron Police Department in advance of the commencement of trial.
>
> 3. Specifically, I viewed the photographs utilized by law enforcement officers for purposes of conducting photographic line-ups with multiple witnesses in the case.

On this record, we cannot conclude that the trial court clearly erred when it found that Freeman or his lawyer knew about and most likely saw the photographs before the filing of Freeman's first motion for judgment relief. Thus, the photos were not newly discovered and could have been produced at trial; for that reason, the original photos did not constitute newly discovered evidence that would warrant a new trial. *Id.*

In addition, because the trial court found that Freeman or his lawyer knew about or saw the original photos, Freeman had to comply with MCR 6.508(D)(3). This court rule applies to successive motions and provides that "if a motion for relief from judgment 'alleges grounds for relief . . . which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter,' a defendant is not entitled to relief unless the defendant demonstrates 'good cause' and 'actual prejudice.' " *Swain*, 288 Mich App at 632, quoting MCR 6.508(D)(3). Actual prejudice means but for the alleged error, the defendant would have had a reasonable likely chance of acquittal. MCR 6.508(D)(3)(b)(i). A court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime. MCR 6.508(D)(3).

In his discussion of MCR 6.508(D)(3), Freeman simply asserts that the prosecutor's failure to disclose the photos in violation of the decision in *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), prevented him from raising the issue earlier, which satisfied the good cause requirement. The trial court's finding that Freeman or his lawyer knew about or saw the photos defeats Freeman's claim that he "had no way to know that the uncropped photographs even existed until he discovered them by happenstance in 2008." Freeman nevertheless argues that, because of the overwhelming evidence of his innocence, the good cause requirement can be waived. He also asserts that as a result of either suppression or ineffective assistance of counsel, he suffered actual prejudice. According to Freeman, had his lawyer been provided the photographs used in the lineup, he would have successfully moved to suppress the lineup identification and there would, thereafter, have been a reasonably likely chance of acquittal. As more fully explained below, the trial court correctly determined there were no grounds for concluding that the prosecutor violated *Brady* or that Freeman's lawyer was ineffective. Additionally, Freeman failed to establish actual prejudice. As such, he has not met the criteria stated under MCR 6.508(D)(3).

## D. *BRADY* VIOLATION

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 US at 87. In *People v Chenault*, 495 Mich App 142, 150; 845 NW2d 731 (2014), the Michigan Supreme Court clarified the elements necessary to establish a Brady violation: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material."

The trial court found that the photos at issue were favorable to the accused. Therefore, we shall address only the remaining two factors. As already discussed, Freeman failed to establish that the prosecution suppressed the photographs before trial. There is ample evidence that Freeman and his lawyer knew of the existence of the photographs and had access to them or even saw them. In *Chenault*, the Supreme Court noted that "evidence that the defense knew of favorable evidence, will reduce the likelihood that the defendant can establish that the evidence was suppressed for purposes of a *Brady* claim." *Chenault*, 495 Mich at 155.

The record also supports the trial court's determination that the photos were not material. "To establish materiality, a defendant must show that 'there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Chenault*, 495 Mich at 150 (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citation omitted). The primary consideration is whether the defendant received a fair trial even without the evidence:

> This standard "does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal. . . ." The question is whether, in the absence of the suppressed evidence, the defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." In assessing the materiality of the evidence, courts

are to consider the suppressed evidence collectively, rather than piecemeal. [*Chenault*, 495 Mich at 150 (citations omitted).]

Freeman contends that had the individual photographs been produced, he would have successfully been able to challenge the photographic lineup as unduly suggestive. A photo lineup is constitutionally infirm "when it is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification." *People v Henry (After Remand)*, 305 Mich App 127, 160-161; 854 NW2d 114 (2014) (quotation marks and citation omitted). "The suggestiveness of a photographic lineup must be examined in light of the totality of the circumstances." *Id.* In general, a photographic lineup is not unduly suggestive if it includes some photographs that are fairly representative of a defendant's physical features and sufficient to reasonably test the identification. *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993). At the evidentiary hearing it was established that the actual photographs do not currently appear as they looked at the time of trial. In any event, a review of the copies confirms that all of the subjects are Caucasian males of roughly the same age. Each man has a moustache and mid-length darkish hair. Four of the subjects, including Freeman, are wearing plaid button-down shirts. Only one of the filler photographs depicts the subject in a dark t-shirt. All five subjects are seen with a jail placard around his neck. The photographs establish a fairly representative sampling of Freeman's physical features. Nothing in the photographs appears to single him out from the other subjects.

Relying on Dysart's testimony, Freeman contends that there were several distinguishing attributes to his photograph that unduly drew attention to him. Those include (1) a horizontal striped background, (2) a placard from the Pleasant Ridge jail (the four fillers are from Port Huron), and (3) in the profile shot Freeman's head is turned to his right, while the other fillers are simply photographed from the side. However, none of these distinguishing features distract from the fact that all of the subjects bear similar physical features.

Dysart opined that the differences in Freeman's photograph drew attention to him. But if that were true, then it should have also been true that the individual in Freeman's exhibit B would have been equally at risk of being identified by the eyewitnesses. That filler-individual is dressed in a t-shirt and his hair is the shortest of all. Dysart also testified that the sequential viewing of the photos, which was used in this case, is also more reliable than a simultaneous viewing. Finally, she admitted that there was no way to know if the differences in the mug shots actually influenced Gobeyn's and Krueger's identification. On this record, even if the photographs had been made available to Freeman, and Freeman's lawyer would have moved to suppress the photographic lineup identifications, the motion would not have been successful.

Moreover, because the photographs were not unduly suggestive, it is unlikely that pointing a different background or police placard would have discredited Gobeyn's and Krueger's identifications. Indeed, Krueger's trial testimony regarding the defense attorney's questioning of him at the corporeal lineup about the suggestiveness of the photographic lineup supports this conclusion. Krueger testified that he simply looked at the photographs and picked out Freeman. Both Krueger and Gobeyn also testified to an independent basis for their identification of Freeman at trial. As the trial court recognized, Freeman's mug shot commitment theory proved inaccurate considering that Krueger identified someone other than Freeman at the subsequent corporeal lineup and this fact was brought to the jury's attention.

Freeman's argument that the jury likely would have discounted the testimony of Gobeyn and Krueger had it known that the actual photo lineup is unpersuasive.

Freeman also argues that the prosecution misled the jury by introducing exhibit 26 in which the photos were "cropped and sanitized" to eliminate nearly all of their suggestive features. However, Freeman ignores the fact that the individual photograph of him emphasized the fact of a prior arrest. Both Dean and Cleland testified that such a photograph carried its own prejudicial implications.

Finally, Freeman argues that discrediting the eyewitness identification was critical because all of the other evidence was weak. This assertion, however, is unsupported by the record. There was testimony that Freeman had a strong motive to kill Macklem and had threatened to hurt him on multiple occasions. Freeman also made incriminating remarks during his four-hour telephone conversation with Crystal and in conversations with police investigators. In addition, Freeman made further incriminating remarks to his cellmate, Joplin. Although Freeman claims that Joplin recanted, the only thing to substantiate this is the affidavit of defendant's investigator recounting a conversation with Joplin. In any event, Joplin testified on two occasions, at trial and at an evidentiary hearing, that Freeman had made incriminating remarks.

Although no shotgun was ever found, Crystal testified that she saw a gun in Freeman's possession that matched the description of a shotgun, as opposed to a rifle. A green Army jacket was found in Freeman's car, which was consistent with the testimony of the eyewitnesses that the man seen in the bushes and driving away from the parking lot was in a green army-style jacket. With respect to his alibi witnesses, the jury heard that Freeman attempted to manipulate several of these witnesses. Finally, although Freeman claims to have established an "airtight" alibi through the testimony of disinterested witnesses, a review of the testimony indicates that his alibi was not as "airtight" as he would like this Court to believe. Freeman received a "trial that resulted in a verdict worthy of confidence." *Chenault*, 495 Mich at 157. Therefore, even if the prosecution failed to disclose the photos at issue, the trial court did not err when it determined that the failure would not warrant relief.

## E. INEFFECTIVE ASSISTANCE

Finally, Freeman argues that he was denied the effective assistance of counsel because, if trial counsel had seen the uncropped photographs, he failed to use them in Freeman's defense. Specifically, Freeman contends that his trial counsel should have used the photographs to support a challenge to the photographic lineup as unduly suggestive or, alternatively, to challenge the credibility of the eyewitness identification.

To establish his ineffective assistance of counsel claim, Freeman must show that his trial lawyer's act or omission fell below an objective standard of reasonableness under prevailing professional norms and there is a reasonable probability that, but for the acts or omissions, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In *Chenault*, our Supreme Court stated whether the suppressed evidence is material under the test stated in *Brady* is assessed under the same 'reasonable probability' standard that is used to assess prejudice under *Strickland*. *Chenault*, 495

Mich at 159. As already discussed, the photographs were not material for purposes of this test. Accordingly, even if Freeman's lawyer's handling of the photos fell below an objective standard of reasonableness, that error would not warrant relief.

## III. CONCLUSION

Although the trial court erred to the extent that it determined that Freeman had not complied with MCR 6.502(G)(2), that error was harmless because the trial court conducted an evidentiary hearing and properly considered the substance of Freeman's claims. The trial court also did not err when it determined that Freeman failed to establish grounds for relief from judgment under *Cress*, *Brady*, or *Strickland*. Consequently, the trial court did not abuse its discretion when it denied Freeman's motion for relief from judgment.

There were no errors warranting relief.

Affirmed.

/s/ Henry William Saad
/s/ Michael J. Kelly