# STATE OF MICHIGAN

# COURT OF APPEALS

In re CARACO PHARMACEUTICAL
LABORATORIES SHAREHOLDER
LITIGATION.

---

JOSEPH ALESSI, SANJEEV ARORA, MADHU
ARORA, and SARAH ARORA,

        Plaintiff-Appellants,

v

CARACO PHARMACEUTICAL
LABORATORIES, LTD., GURPARTAP SINGH
SACHDEVA, FOLSOM F. BELL, TIMOTHY S.
MANNEY, EDDIE MUNSON, SUN
PHARMACEUTICAL LABORATORIES, LTD.,
and SUN PHARMA GLOBAL, INC.,

        Defendants-Appellees.
and

SUDHIR V. VALIA, SAILESH T. DESAI,
JITENDRA N. DOSHI, and DILIP S.
SHANGHVI,

        Defendants

UNPUBLISHED
June 13, 2017


No. 329933
Wayne Circuit Court
LC No. 10-014311-CB

---

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

In this shareholder derivative action, plaintiffs, former minority shareholders of Caraco Pharmaceutical Laboratories, Ltd. (Caraco), appeal as of right the trial court's October 13, 2015 opinion and order granting summary disposition in favor of all defendants pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted). For the reasons stated below, we reverse the trial court's ruling and remand the matter for further proceedings consistent with this opinion.

-1-

I.  PERTINENT FACTS AND PROCEDURAL HISTORY

*Underlying facts*[1]

During all times relevant to the instant appeal, Caraco was a Detroit-based manufacturer, marketer, and distributor of generic pharmaceuticals.  Defendant-appellees Sun Pharmaceutical Laboratories, Ltd. (Sun Pharmaceutical), and Sun Pharma Global, Inc. (Sun Global), and defendant Dilip S. Shanghvi[2] collectively owned approximately 75.8% of Caraco's outstanding common stock.  Sun Global, a trading and investment company, is a wholly owned subsidiary of Sun Pharmaceutical.  Shanghvi is the controlling stockholder of Sun Pharmaceutical and Caraco's Chairman of the Board since 1997, when Caraco and Sun Pharmaceutical entered into a stock purchase agreement that gave Sun Pharmaceutical substantial control over the day-to-day operations of Caraco.  Since 1997, Caraco and Sun Pharmaceutical have entered into or renewed several purchase agreements that gave Caraco rights to manufacture certain generic pharmaceuticals and to market and distribute Sun Pharmaceutical's products in the United States and its territories.

On December 3, 2010, Sun[3] proposed to purchase the shares of Caraco that they did not already own at a price of $4.75 per share, and take Caraco private.  Caraco's Board of Directors authorized an Independent Committee, composed of defendants Folsom F. Bell, Timothy S. Manney, and Eddie Munson, to review the proposal and respond to the proposal's terms, including the per share purchase price.[4]  Bell was the Independent Committee's chair.

On December 27, 2010, Caraco announced that Sun Pharmaceutical would extend its existing distribution and marketing agreements with Caraco until January 28, 2012, but would terminate them thereafter.  On January 3, 2011, Caraco announced that, contrary to its previous forecasts, it would not be able to restart production of various drugs by the end of fiscal year 2011[5].  Upon the Independent Committee's recommendation, Caraco entered into a definitive

---

[1] The facts are derived from plaintiffs' amended complaint.

[2] Although a defendant in the action in the trial court, Shanghvi is not participating in this appeal.

[3] "Sun" refers to Sun Pharmaceutical and Sun Global collectively.

[4] During these events, Caraco's board was comprised of Shanghvi, Sachdeva, the members of the Independent Committee, and defendants Sailesh T. Desai, and Sudhir V. Valia.  Desai and Valia, like Shanghvi, are not participating in this appeal.  Although the complaint lists Jitendra N. Doshi as a defendant, it does not discuss him as a party nor contain any allegations about his role in the transaction.  Doshi is not participating in the instant appeal.

[5] Subsequent to a June 25, 2009 raid by United States Marshals, Caraco entered into a consent decree with the FDA that stopped all production at Caraco's facilities in Michigan until Caraco completed numerous remediation actions.  In the fall of 2010, Caraco announced its intention to restart production of two generic drug products by the end of fiscal year 2011, and another two or three products by the third quarter of fiscal year 2012.

merger agreement with Sun on or about February 22, 2011. Under the agreement, minority shareholders received $5.25 per share. The acquisition was completed on June 14, 2011.

*Procedural History*

On April 11, 2011, plaintiffs filed a four-count consolidated class-action complaint. In Count I, plaintiffs alleged that the going-private transaction (GPT) (i.e., the merger of Sun Pharmaceutical and Caraco) substantially underestimated Caraco's true value and was not procedurally or financially fair to the minority shareholders. Plaintiffs alleged in Count II that defendants Shanghvi, Sachdeva, Desai, and Valia breached their fiduciary duties to Caraco's public stockholders by favoring the interests of the majority shareholders and forcing through the GPT at an inadequate price. In Count III, plaintiffs alleged that defendants Sachdeva, Desai, and Valia aided and abetted Sun Pharmaceutical, Sun Global, and Shanghvi in their breach of the fiduciary duties they owed to plaintiffs. Finally, plaintiffs alleged in Count IV that defendants Bell, Munson, and Manney, the Independent Committee, breached their fiduciary duties to plaintiffs by agreeing to GPT terms that were exceedingly favorable to Sun at the expense of Caraco's minority shareholders.

Defendants moved for summary disposition of plaintiffs' complaint pursuant to MCR 2.116(C)(8). At the conclusion of an August 31, 2011 hearing, the trial court, Judge Gershwin A. Drain presiding, granted the motion. After the court announced its ruling, plaintiffs' counsel requested leave to amend the complaint. Judge Drain denied the request for leave to amend, but implied that plaintiffs could include their request in a motion and brief for reconsideration. On October 11, 2011, plaintiffs filed a motion for reconsideration of the court's order denying their request to amend the complaint. The trial court denied the motion in an order stating that plaintiffs had not met their burden of demonstrating that the matter warranted reconsideration. Plaintiffs appealed Judge Drain's denial of their motion for leave to amend their complaint in this Court, which concluded that Judge Drain had abused his discretion "by denying plaintiffs the opportunity to provide legally sufficient allegations in an amended complaint . . . ." *In re Caraco Pharm Laboratories, Ltd Shareholder Litigation*, unpublished order of the Court of Appeals, issued March 27, 2013 (Docket No. 313893), p 3. The Court reversed Judge Drain's order, and remanded the matter for further proceedings consistent with its opinion. *Id.* On remand, the trial court[6] granted plaintiffs' motion for leave to amend their complaint.

Generally speaking, the six-count amended complaint contained specific allegations of a scheme by Bell and Shanghvi to devalue Caraco's stock in the months preceding the GPT in order to lower the cost of the GPT and to force the GPT to take place. Counts II through V paralleled the four counts raised in plaintiffs' original complaint. Count I alleged that Bell breached fiduciary duties of loyalty and good faith by negotiating with Shanghvi to prevent Caraco from restarting its production activities and to terminate the distribution agreements between Sun Pharmaceutical and Caraco. Count VI alleged that the individual defendants had a

---

[6] A different judge presided on remand because Judge Drain had begun serving on the federal bench.

duty to ensure that minority shareholders received full and complete disclosures of all material facts regarding the GPT, and that such disclosures were not made.

In lieu of an answer to the complaint, defendants Bell, Manney, Munson, Caraco, and Sachdeva filed a motion for summary disposition pursuant to MCR 2.116(C)(8); Sun Global filed a concurrence. These defendants first contended that the law of the case doctrine barred plaintiffs from asserting that a scheme existed to pay minority shareholders inadequate value for their shares because the allegations related to this scheme were no more than an elaboration on claims dismissed by Judge Drain. They also contended that Michigan's appraisal statute, MCL 450.1762, was plaintiffs' sole remedy because the complaint was no more than a dispute over the adequacy of the per-share price paid in the GPT, and none of plaintiffs' complaints had satisfied the exception for fraudulent or illegal conduct. With regard to plaintiffs' nondisclosure claims (i.e., claims related to the proxy statement), these defendants argued that the information either was disclosed or was not material as a matter of law. They also argued that Caraco's articles of incorporation exculpated Caraco's directors to the fullest extent allowed by Michigan law, and that plaintiffs had failed to allege claims that would survive in light of that statute. Finally, these defendants contended that because the Independent Committee reviewed and approved the GPT, the court should treat the transaction as a disinterested transaction and apply the business judgment rule. The business judgment rule generally holds that courts should not interfere with the management decisions of directors. *Churella v Pioneer State Mut Ins Co (On Remand)*, 258 Mich App 260, 270-271; 671 NW2d 125 (2003). The rule does not protect decisions that are fraudulent or not made in good faith, but defendants argue that plaintiffs have failed to allege facts sufficient to overcome application of the rule in this case.

Plaintiffs opposed defendants' motion on grounds similar to those plaintiffs raise on appeal. After hearing oral argument on defendants' motion on May 7, 2015, the trial court stated that it would like to hold an additional hearing and would inform the parties if it required any additional information. On the second day of the hearing, June 18, 2015, the court explained that it intended to rule consistently with Judge Drain "as it pertains to the original [c]omplaint," and wanted the parties to identify specific differences between the original complaint and the amended complaint. Plaintiffs identified the "set of new facts" as those related to Bell's communications with investment banking firm William Blair & Co. [Blair] prior to Blair's retention by the Independent Committee and to Bell's proposal of a "success fee" upon successful completion of the GPT. The trial court sought evidence that was "factual and objective" with regard to whether Bell's interactions with Blair were appropriate for a fiduciary, and whether it was common practice to negotiate a "success fee" of the type at issue here. At one point in the hearing, after the trial court again asked for "a more factual response" from plaintiffs regarding the propriety of a success fee, plaintiffs' counsel noted that the motion was brought under MCR 2.116(C)(8), and that the questions before the trial court should be decided on legal grounds, not factual ones. The trial court indicated that it could allow some limited discovery on the issue, or, if the parties had "objective evidence," then the trial court "might have [its] answer." At the close of the hearing, the trial court invited supplemental briefs addressing whether Bell's requested success fee and communications with Blair were generally accepted practices. Both parties filed supplemental briefs and reply briefs.

On October 13, 2015, the trial court issued a written opinion granting defendants' motion pursuant to MCR 2.116(C)(8).

## II. ANALYSIS

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the claim on the basis of the pleadings alone." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013); MCR 2.116(G)(5). All factual allegations in support of the claim are accepted as true, as are any reasonable inferences or conclusions that can be drawn from the facts. *Gorman v American Honda Motor Co*, 302 Mich App 113, 131; 839 NW2d 223 (2013). In addition, the factual allegations and reasonable inferences are construed in the light most favorable to the nonmoving party. *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012). A motion brought pursuant to MCR 2.116(C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Id*. at 435.

## B. LAW OF THE CASE DOCTRINE

Plaintiffs first contend that the trial court erred in assuming that the law of the case doctrine obligated it to follow Judge Drain's prior opinion, and in applying the doctrine to dismiss Counts II through V without addressing them. "[T]his Court reviews de novo the determination whether the law-of-the-case doctrine applies and to what extent it applies." *Augustine v Allstate Ins Co (After Remand)*, 292 Mich App 408, 424; 807 NW2d 77 (2011).

The law of the case doctrine holds that, once an appellate court has ruled on a particular issue, all lower tribunals are bound to adhere to that ruling. *Kidder v Ptacin*, 284 Mich App 166, 170; 771 NW2d 806 (2009). "The doctrine applies to questions specifically decided in an earlier decision and to questions necessarily determined to arrive at that decision." *Webb v Smith (After Second Remand)*, 224 Mich App 203, 209; 568 NW2d 378 (1997). "The rationale supporting the doctrine is the need for finality of judgment and the want of jurisdiction in an appellate court to modify its own judgments except on rehearing." *Id*. at 209-210. There are two exceptions to the doctrine: "(1) when the decision would preclude the independent review of constitutional facts and (2) when there has been an intervening change in the law." *Id*. at 210. Absent an appellate court ruling on a particular issue, the law of the case doctrine does not prevent a trial court from reversing its own prior decisions. *KBD & Assoc, Inc v Great Lakes Foam Tech, Inc*, 295 Mich App 666, 679-680; 816 NW2d 464 (2012) ("[A] trial court has unrestricted discretion to review its previous decision," and "the law of the case doctrine does not preclude a trial court from reversing its prior decision.") (Quotation marks and citation omitted).

In the instant case, the trial court considered itself bound by the law of the case doctrine to follow Judge Drain's prior rulings that none of the defendants had breached their fiduciary duties in connection with the GPT, and that "the exculpatory provision in Caraco's Articles of Incorporation exculpated the individual defendants from personal liability." However, the trial court considered itself bound not because this Court had "specifically decided" those issues, *Webb*, 224 Mich App at 209, but because this Court had not done so, i.e., because on plaintiffs' first appeal, this Court had not "disturb[ed] Judge Drain's order granting [d]efendant's [sic] [m]otion for [s]ummary [d]isposition."

-5-

In support of the trial court's reasoning, defendants contend that the law of the case doctrine applies to rulings made by a trial court that a party fails to appeal. As authority for their position, defendants rely primarily on cases illustrating application of the doctrine under federal law. As this Court has explained, however, Michigan law differs from federal law on this point. "Under federal law, the law-of-the-case doctrine applies to prior decisions of a trial court. Under Michigan law, however, the law-of-the-case doctrine does not apply to prior trial court decisions. Moreover, MCR 2.613(B) permits a successor judge to correct any errors made by a prior judge." *Tinman v BCBSM*, 264 Mich App 546, 560; 692 NW2d 58 (2004) (citations omitted).

Defendants also rely on *Kidder*, 284 Mich App 166 (2009), as illustrative of their position. Their reliance is misplaced. The plaintiff in *Kidder* filed a medical malpractice claim against the defendants, who moved for summary disposition on the ground that the statute of limitations barred the plaintiff's claim. *Kidder*, 284 Mich App at 168. The trial court denied the defendants' motion and then stayed proceedings so the defendants could appeal the court's ruling.[7] *Id*. On appeal, this Court concluded that the statute of limitations did in fact bar the plaintiff's claim. Accordingly, the Court reversed the trial court's ruling, and remanded the matter for entry of a judgment for the defendants. *Id*. at 168-169. Significantly, the plaintiff did not appeal this Court's ruling to Michigan's Supreme Court. *Id*. at 169. Later, when the Supreme Court overruled the law upon which this Court had based its affirmance,[8] the plaintiff successfully sought to have the trial court reinstate her case pursuant to MCR 2.612 (governing relief from a judgment or order). *Id*. at 169-170. On the defendants' appeal of the trial court's reinstatement of the case, this Court again reversed the trial court, observing in relevant part that, when the plaintiff did not appeal this Court's original determination that the statute of limitations barred her claim, "the dismissal of [the] plaintiff's case because final (an effective judgment)." *Id*. at 171.

Defendants interpret the Court's holding in *Kidder* to be "that the plaintiff's failure to appeal the trial court's entry of summary disposition rendered the trial court's ruling that the plaintiff's action was barred by the statute of limitations the law of the case, which the trial court was obliged to follow." This is an incorrect interpretation of *Kidder*. As the facts clearly show, it was not the trial court's ruling that the *Kidder* plaintiff failed to appeal, it was *this* Court's ruling that the *Kidder* plaintiff failed to appeal in the Supreme Court. Moreover, it was not the trial court's judgment that became the law of the case, but this Court's judgment. The trial court in *Kidder* entered on remand the order dismissing the plaintiff's case pursuant to this Court's

---

[7] The appeal was to determine whether *Waltz v Wyse*, 469 Mich 642; 677 NW2d 813 (2004), which held that the tolling statute did not apply to the extension of the limitations period provided for under the wrongful death savings statute, applied retroactively. In an unpublished opinion issued January 23, 2007 (Docket No. 257703), this Court decided that it did apply retroactively, as decided in *Mullins v St Joseph Mercy Hosp*, 271 Mich App 503; 722 NW2d 666 (2006).

[8] Reversing this Court's holding in *Mullins*, the Michigan Supreme Court ruled that *Waltz* did not apply to causes of action filed after March 28, 2000. *Mullins v St Joseph Mercy Hosp*, 480 Mich 948; 741 NW2d 300 (2007) (Mem).

"specific decision" and instruction to do so. This Court observed that the judgment from which the trial court was attempting to grant relief by reinstating the plaintiff's claim was not its own judgment, but the "judgment of a higher authority," i.e., the "judgment embodied in this Court's . . . opinion." *Id*. In short, *Kidder* provides no support for defendants' position regarding the law of the case doctrine.[9]

We conclude that the trial court erred by presuming that the law of the case doctrine applied to obligate it to follow the prior rulings of Judge Drain. The doctrine applies to appellate court decisions that were "specifically decided in an earlier decision." *Webb*, 224 Mich App at 209. The only question "specifically decided" by this Court in plaintiffs' first appeal was whether Judge Drain abused his discretion by denying plaintiffs' motion for leave to amend their original complaint. On remand, the trial court granted plaintiffs' motion for leave to amend, and plaintiffs filed an amended complaint that superseded the original complaint that Judge Drain had summarily dismissed. MCR 2.118(A)(4). Defendants cite no persuasive authority or authority binding on this Court to support their position that, under these circumstances, certain of Judge Drain's rulings were binding on the trial judge. On the contrary, Michigan law is clear

---

[9] Defendants also cite *Knebel v Mich State Univ*, unpublished opinion per curiam of the Court of Appeals, issued July 25, 1997 (Docket No. 186770), as support for their position. In this employment dispute, the plaintiff filed a four-count complaint against the defendants, three of which the court of claims dismissed. Subsequent to the court giving her 30 days to file an amended complaint, the plaintiff filed a three-count complaint, one count of which was for declaratory relief. *Knebel*, unpub op at 2. The defendants again moved for summary disposition, alleging among other things "that plaintiff's count for declaratory relief should be dismissed because the Court of Claims adjudicated that the allegations failed to state a claim upon which relief could be granted." *Id*. The court granted the motion, and this Court affirmed, agreeing with the court of claims that plaintiff's "claim for a declaratory judgment was barred by the law of the case doctrine." *Id*. The Court explained, "[u]nder the law of the case doctrine, a final decision concerning a particular issue binds courts of equal or subordinate jurisdiction during subsequent proceedings in the same case." *Id*. The Court further explained that the allegations in the plaintiff's claim for a declaratory judgment were "identical to that previously adjudicated, the law of the case doctrine applies," and the trial court did not err in applying it to dismiss the plaintiff's claim. The Court cited as authority for its position, *McNees v Cedar Springs Stamping Co*, 219 Mich App 217, 221-222; 555 NW2d 481 (1996). Defendants in the instant case rely on this explanation to support the trial court's application of the law of the case doctrine to certain of plaintiffs' claims. However, what this Court said in *McNees* was, "[u]nder the law of the case doctrine, an *appellate* court's decision concerning a particular issue binds courts of equal or subordinate jurisdiction during subsequent proceedings in the same case." *McNees*, 219 Mich App at 221-222 (emphasis added). This Court's articulation of the law of the case doctrine in *McNees* is consistent with its explanations in other published opinions. See, e.g., *KBD*, 295 Mich App at 679-680; *Tinman*, 264 Mich App at 560. As an unpublished opinion, *Knebel* has no precedential effect, but it may be persuasive. MCR 7.215(C)(1) However, to the extent that *Knebel* may be said to advance a proposition at odds with that espoused by published case law, we decline to follow it.

that a trial court may revise its previous decisions. Thus, the trial court's grant of summary disposition with respect to Counts II through V was in error.[10]

## C. BREACH OF FIDUCIARY DUTY

### 1. BELL'S CONDUCT WITH BLAIR

Plaintiffs next contend that the trial court correctly held that plaintiffs' amended complaint contains allegations sufficient to demonstrate breaches of fiduciary duty by Bell with regard to his conversations with Blair, but incorrectly concluded that these breaches were not actionable in light of the exculpatory clause found in Caraco's articles of incorporation. We agree.

As an initial matter, we note that Caraco's articles of incorporation were not part of the pleadings available for the trial court's consideration when ruling on defendant's (C)(8) motion. MCR 2.116(G)(5); *Horace v City of Pontiac*, 456 Mich 744, 749; 575 NW2d 762 (1998) ("Only the pleadings may be considered when a motion is based on subrule (C)(8)"). A "written instrument" upon which a party bases a claim or defense may become part of the pleadings under certain conditions. MCR 2.113(F). However, plaintiffs do not base their claims on the articles of incorporation. On the contrary, the exculpatory provision contained within the articles forms the basis for one of the *defenses* raised by defendants. In lieu of filing an answer, however,

---

[10] Counts II through V of the amended complaint set forth breach of fiduciary duty claims against Sun Pharmaceutical, Sun Global, and Shanghvi (Count II), Shanghvi, Sachdeva, Desai, and Valia (Count III), and Bell, Munson, and Manney (Count V), and a claim of aiding and abetting in the breach of fiduciary duty against Sachdeva, Desai, and Valia (Count IV). Although we have determined that the trial court erred in dismissing these counts based on the law of the case doctrine, we decline to consider whether plaintiffs' amended complaint sets forth legally sufficient claims with regard to these counts and the targeted defendants in these counts. The issue plaintiffs presented in their statement of issues was whether the trial court erred in applying the law of the case doctrine and, if not, did the court properly apply it. Plaintiffs did not raise in their statement of issues the question of whether their amended complaint states legally sufficient claims against all of the parties named in Counts II through V. Moreover, apart from plaintiffs' general allegations that Caraco's board failed to disclose material information in the proxy statement (Count VI), neither party addressed in their briefs whether plaintiffs' amended complaint states legally sufficient claims in Counts II through V. Therefore, the issue is not properly presented. See MCR 7.212(C)(5). Although the amended complaint certainly seems to set forth legally sufficient allegations with regard to some of the defendants in these Counts, the allegations to support the claims against others seems to be lacking. However, because this issue is not before the Court, we decline to address it. *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003) (indicating that this Court can decline to consider and argument not within the scope of the question presented).

-8-

defendants filed a motion for summary disposition and attached the articles to that motion. A motion and its supporting brief do not constitute a pleading under MCR 2.110.[11]

Nevertheless, this Court may exercise its discretion to take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201(b). Caraco's articles of incorporation are publically available on the website of Michigan's Department of Licensing and Regulatory Affairs,[12] no one disputes what is stated in the articles, and no amount of discovery will change the language in the articles of incorporation's text. Accordingly, we take judicial notice of the exculpatory clause in the articles upon which defendants' rely.

It is undisputed that Caraco's articles of incorporation protect directors from personal liability to the fullest extent allowed by MCL 450.1209. In turn, MCL 450.1209 provides in relevant part that the articles of incorporation may contain:

> (c) A provision eliminating or limiting a director's liability to the corporation or its shareholders for money damages for any action taken or any failure to take any action as a director, except liability for any of the following:
>
> (*i*) The amount of a financial benefit received by a director to which he or she is not entitled.
>
> (*ii*) Intentional infliction of harm on the corporation or the shareholders.
>
> (*iii*) A violation of [MCL 450.1551].[13]
>
> (*iv*) An intentional criminal act.

The trial court interpreted MCL 450.1209 as "requir[ing] [p]laintiffs to allege that an unentitled self-interested transaction occurred[.]" It reached this conclusion by comparing MCL 450.1209 to the analogous Delaware statute. The Delaware statute does not contain an exception for the intentional infliction of harm on the corporation or shareholders. However, it does contain exceptions for breaches of the duly of loyalty, i.e., "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law," and for transactions "from which the director derived an improper personal benefit." Del Code Ann, Title 8, §102(b)(7).[14]

---

[11] A "pleading" is defined as a complaint, a cross-claim, a counterclaim, a third-party complaint, an answer to any of those, and a reply to an answer. MCR 2.110(A).

[12] http://www.dleg.state.mi.us/bcs_corp/sr_corp.asp (accessed on May 15, 2017).

[13] Neither sub-subsection (*iii*) nor (*iv*) is relevant to the issues at hand.

[14] The statute provides in relevant part that a business may include the following in its certificate of incorporation:

> A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary

Observing that the Delaware statute has an exception for a breach of the duty of loyalty while Michigan's statute does not, the trial court concluded that the Michigan statute is narrower than Delaware's statute, and that Michigan's statute only excepts "self-interested transaction[s]," and therefore requires a plaintiff to allege "that an unentitled self-interested transaction occurred."

In this case, the appropriate framework for interpreting MCL 450.1209 is not to compare it to a foreign statute that uses different language, but rather, to apply the language of the statute as written, giving the words of the statute their plain and ordinary meanings. *Nucolovic v Hill*, 287 Mich App 58, 64; 783 NW2d 124 (2010) ("When construing a statute, we use well-established principles, and begin by consulting the specific statutory language"). Michigan's statute does not allow an exculpatory provision to eliminate or limit a director's liability to shareholders in "any" of the circumstances listed in MCL 450.1209(1)(c). Each individual circumstance spelled out by MCL 450.1209(1)(c)(*i*)-(*iv*) stands alone, and if any of those individual circumstances exists, an exculpatory clause is of no effect. One such circumstance is the "[i]ntentional infliction of harm on the corporation or the shareholders." MCL 450.1209(1)(c)(*ii*). By its plain language, this provision does not require any showing of an "unentitled self-interested transaction." Indeed, MCL 450.1209(1)(c)(*ii*) makes no mention of a transaction at all.

We conclude that plaintiffs' complaint alleges conduct that falls within this exception. Taken as a whole, plaintiffs' complaint alleges that Bell and Shanghvi conspired to inflict harm on minority shareholders by artificially depressing the value of Caraco. As alleged in the amended complaint, this scheme included Bell's conversations with Blair before the Independent Committee retained Blair. Whether the evidentiary record will ultimately prove plaintiffs' claims is a matter for another day. Based on the pleadings, however, plaintiffs have stated a claim that the exculpatory clause in Caraco's articles of incorporation does not preclude as a matter of law.

Defendants argue that, even if the articles of incorporation do not exculpate Bell and the other individual defendants, plaintiffs' sole remedy is the appraisal statute because their complaints are all about price. See *Krieger v Gast*, 122 F Supp 2d 836 (WD Mich, 2000) ("[A] claim should be dismissed where it is simply a complaint over price—the amount and how it was established—for which the statutory appraisal is a wholly adequate remedy") (quotation marks

---

duty as a director, provided that such provision shall not eliminate or limit the liability of a director:  (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.

Section 174 addresses the liability of directors for unlawful payment of dividends or an unlawful stock purchase or redemption, exoneration from liability, contribution among directors, and subrogation.

and citation omitted).[15] If plaintiffs' complaint were just about price, defendants would be correct. However, to the extent that plaintiffs allege breaches of fiduciary duties that had a substantial impact on price, their allegations gives rise to a complaint other than a dispute about price. See *id.* at 847-850. " 'A balance must be struck between sustaining complaints averring faithless acts, which taken as true would constitute breaches of fiduciary duties that are reasonably related to and have a substantial impact upon the price offered, and properly dismissing those allegations questioning judgmental factors of valuation.' " *Id.* at 847, quoting *Rabkin v Philip A. Hunt Chemical Corp*, 498 A2d 1099, 1107-1108 (Del, 1985). To the extent that plaintiffs have alleged facts in support of a scheme to inflict harm on minority shareholders by artificially depressing Caraco's value prior to the GPT, and this scheme involved Bell's conversations with Blair, plaintiffs have stated a claim that, although involving price, is about more than price. Therefore, defendants' contention that the appraisal statute is plaintiffs' sole remedy is unavailing.[16]

## 2. BELL'S CONDUCT WITH SHANGHVI

Plaintiffs next contend that the trial court erred in its ruling that the amended complaint failed to state an actionable claim based on collusion between Bell and Shanghvi to depress Caraco's value prior to the GPT. Again, we agree.

Under MCL 450.1541a(1), directors and officers of a corporation owe certain fiduciary duties, including the duty to act in good faith, MCL 450.1541a(1)(a), to act with ordinary care, MCL 450.1541a(1)(b), and to act "[i]n a manner he or she reasonably believes to be in the best interests of the corporation[,]" MCL 450.1541a(1)(c). MCL 450.1541a(4) authorizes actions against directors and officers if they violate these duties. Majority shareholders also owe fiduciary duties to the corporation and to minority shareholders. *Salvadore v Connor*, 87 Mich App 664, 675; 276 NW2d 458 (1978).[17] This duty requires a majority shareholder to act with " 'the utmost good faith in its control and management as to the minority[,] and it is the essence of this trust that it must be so managed so as to produce to each shareholder[] the best possible return upon his investment.' " *Id.* (quoting 6 Callaghan's Michigan Civil Jurisprudence (2d ed), § 166, p 365)). As one of Caraco's directors, Bell owed a duty to act in good faith and in the best interests of the corporation. MCL 450.1541a(1)(a), (1)(c). Shanghvi, as a controlling shareholder, owed minority shareholders a duty of good faith, and to act in a way to obtain the best possible return on the investments made by minority shareholders. *Salvadore*, 87 Mich App at 675.

---

[15] "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

[16] Defendants contend in the alternative that Bell's conversations with Blair prior to the Independent Committee's retention of Blair did not constitute a breach of fiduciary duty. As this argument involves consideration of factors beyond the pleadings, we decline to address it.

[17] This Court is not bound by a rule of law established by a decision published prior to November 1, 1990. MCR 7.215(J)1).

Plaintiffs' allegations regarding the GPT generally fall into two categories. First, they allege that as Caraco came close to being able to restart its manufacturing business, Bell and Shanghvi strategized how to avoid this restart. Plaintiffs allege that the purpose of this strategy was to avoid an increase in Caraco's stock price and, consequently, allow the GPT to proceed at an artificially low cost. Second, they allege that Bell began advocating for an end to Caraco's distribution agreements with Sun Pharmaceuticals in July 2010, and that he and Shanghvi planned to lower Caraco's stock price by announcing the termination of Sun Pharmaceutical's long-term distribution agreements with Caraco. In keeping with the alleged plan, Caraco announced in late December 2010 that Sun Pharmaceutical would not extend its distribution agreements with Caraco beyond January 28, 2012, and acknowledged its belief that cessation of the agreements would "have a material adverse effect on [Caraco's] operations." On January 3, 2011, Caraco announced that, contrary to earlier announcements, it would not expect to begin manufacturing activities, and was unsure when manufacturing would resume. According to plaintiffs' amended complaint, these announcements caused Caraco's stock price to drop substantially.

Addressing whether plaintiffs' allegations stated a claim for breach of fiduciary duty, the trial court explained in relevant part:

> As recognized above, [p]laintiffs' amended complaint expands on the dealings between [d]efendants Bell and Shanghvi leading up to the consummation of the proposed merger. At the same time, however, this [c]ourt also recognizes that Judge Drain's previous dismissal still applies to the current proceeding. In that ruling, Judge Drain was very clear that "it's hard for me to imagine amendments to the complaint that would suffice . . . [to the] alleged breach of fiduciary duty."
>
> *…*…*
>
> This [c]ourt is of the belief that Bell was substantially complying with his fiduciary duty. Plaintiffs do not point to any specific discussion that Bell was in favor of terminating the [d]istribution [a]greements. Rather, the facts do reveal that he was concerned with being able to value Caraco, and an issue of particular importance was establishing whether or not the [d]istribution [a]greements would be renewed as they were set to expire in early 2011. In terms of these facts, this [c]ourt must abide by Judge Drain's ruling in that the [p]laintiffs have not satisfied the pleading requirement. Accordingly, [d]efendants are granted summary disposition on this issue.

The trial court's ruling contains several errors. First, as plaintiffs correctly note, the trial court never addressed their allegations regarding the plan to prevent Caraco from restarting its manufacturing activities. Taking the factual allegations as true, as well as reasonable inferences one may draw from those facts, the complaint alleges the existence of a plan, crafted by Bell and Shanghvi, to prevent Caraco's stock price from increasing by ceasing remediation activities that otherwise would have allowed Caraco to resume manufacturing. Plaintiffs allege that in a July 2011 memorandum, one of three objectives laid out by Bell was to avoid restarting Caraco's manufacturing activities, and that in an August 11, 2011 e-mail, Bell opined that if Caraco

-12-

announced that it would restart manufacturing, its share price could increase to as much as $10 per share. Thus, part of the plan involved publically announcing that Caraco's manufacturing activities would not resume as anticipated. From the facts alleged in the complaint, one may reasonably infer that the purpose of this decision to announce that Caraco would not resume manufacturing as planned was to allow completion of the GPT at a reduced price, to the detriment of minority shareholders. Therefore, in our view, plaintiffs' complaint states a claim for breach of fiduciary duty with regard to these allegations. As we stated above, whether the evidentiary record will ultimately prove plaintiffs' claim is a matter for another day.

Next, the trial court clearly based its decision in part on a purported ruling made by Judge Drain that the court viewed as binding. As we explained above, the law of the case doctrine is inapplicable here because there is no appellate decision on the substance of plaintiffs' allegations. Further, the "ruling" the court thought applicable is actually Judge Drain's speculation regarding allegations in an amended complaint that he never saw. In other words, there was no prior ruling by Judge Drain with regard to whether the *amended* complaint stated a claim for breach of fiduciary duty.

Finally, the trial court also made factual findings inappropriate in a motion for summary disposition brought pursuant to MCR 2.116(C)(8). See e.g., *Hubscher & Son, Inc v Storey*, 228 Mich App 478, 482; 578 NW2d 701 (1998). As we stated above, under a (C)(8) motion, all factual allegations stated in plaintiffs' amended complaint must be "accepted as true and construed in a light most favorable to" plaintiffs, the nonmoving party. *Johnson*, 491 Mich at 435. Additionally, the court must also accept as true all reasonable inferences and conclusions that one could draw from the facts alleged. *Gorman*, 302 Mich App at 131. Only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery should the court grant a (C)(8) motion. *Johnson*, 491 Mich at 435. Plaintiffs believe that the facts alleged showed that Bell and Shanghvi schemed to devalue Caraco so that minority shareholders could be cashed out at a reduced price, and that the scheduled termination of the distribution agreements and the public announcement of their termination was part of that plan. The trial court did not address why, accepting the factual allegations as true and construing them in the light most favorable to plaintiffs, plaintiffs had not stated a claim for breach of fiduciary duty based on the facts alleged. Instead, the trial court erred in its analysis by offering an alternate interpretation that accepted the factual allegations as true, but construed them in the light most favorable to defendants.

The factual allegations in plaintiffs' amended complaint supports breach of fiduciary duties claims arising from the existence of a scheme put in place by Bell and Shanghvi to devalue Caraco prior to the GPT so that the transaction could be completed at the lowest possible price. Such a scheme would violate the fiduciary duties owed by Bell and Shanghvi to Caraco and its minority shareholders. While these may not be the only inferences one may draw under the circumstances, at the present phase of the proceedings, all allegations must be construed in the nonmoving party's favor. *Johnson*, 491 Mich at 435. Therefore, we conclude that plaintiffs have stated a claim for breach of fiduciary duty, and that the trial court erred by dismissing the count pursuant to MCR 2.116(C)(8).

Defendants argue that even if the amended complaint states a claim for breach of fiduciary duty, any such claim would fail in light of the exculpatory clause of the articles of

incorporation. However, as we discussed elsewhere in this opinion, the exculpatory clause cannot protect against allegations in plaintiffs' amended complaint of intentional infliction of harm against Caraco or its shareholders.

## E. PROXY OMISSIONS

Finally, plaintiffs contend that the trial court erred in holding that defendants' failure to provide Caraco's free cash flow projections and to disclose material information concerning the process that led to the GPT were not material omissions from the proxy statement. In their reply to defendants' motion for summary disposition, plaintiffs treated this issue as an alternative basis to avoid the exclusivity of the appraisal remedy. We concluded above that plaintiffs alleged facts sufficient to support their claim that Bell and Shanghvi breached their fiduciary duties to plaintiffs by crafting and executing a plan to reduce the value of Caraco's shares prior to the GPT to obtain plaintiffs' shares of Caraco at the lowest possible price, and that this conduct is not exculpable under Michigan law. Accordingly, we need not address plaintiffs' alternate argument.

## F. DEFENDANTS' ALTERNATIVE GROUND FOR AFFIRMANCE

As an alternate ground for affirmance, defendants argue that the business judgment rule should apply and prevent any challenge to the GPT. While defendants raised this defense in the trial court, the trial court declined to address it, as it had granted summary disposition on other grounds. Although the issue was not reached by the trial court, "[t]his Court may address the issue because it concerns a legal question and all of the facts necessary for its resolution are present." *Dell v Citizens Ins Co of America*, 312 Mich App 734, 751 n 40; 880 NW2d 280 (2015).

The business judgment rule generally holds that courts should not interfere with the management decisions of directors. *Churella*, 258 Mich App at 270-271. However, the rule does not protect decisions that are fraudulent or not made in good faith. *Id*. at 271-272. Plaintiffs' amended complaint clearly alleges fraudulent and bad-faith conduct with respect to the GPT. Essentially, plaintiffs allege that the GPT was preceded by a plan to artificially devalue Caraco's stock in order to benefit majority shareholders and to the detriment of minority shareholders. As indicated above, defendants argue that plaintiffs' complaint is no more than a dispute over the adequacy of the per-share price paid to minority shareholders. However, as also indicated above, to say plaintiffs only challenge the adequacy of this price is to ignore essentially all substance of the complaint. Plaintiffs allege that the price is the product of a flawed and fraudulent process, and it is this process that plaintiffs challenge. Defendants have not demonstrated that the business judgment rule precludes relief.

## III. CONCLUSION

We conclude that the trial court erred in applying the law of the case doctrine to dismiss Counts II through V of plaintiffs' complaint. Accepting as true plaintiffs' factual allegations in support of their claim and any reasonable inferences or conclusions drawn from those facts, *Gorman*, 302 Mich App at 131, and construing them in the light most favorable to plaintiffs, *Johnson*, 491 Mich at 435, we also conclude that plaintiffs' amended complaint states a claim for

breach of fiduciary duty with regard to Bell and his alleged dealings with Blair and Shanghvi (Count I). A motion brought pursuant to MCR 2.116(C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. *Id*. at 435. In light of the allegations contained in plaintiffs' amended complaint, and considering the standard of review for a (C)(8) motion, we cannot say that no factual development could possibly justify recovery. Therefore, we reverse the order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(8), and remand the matter for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.


/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro